JS44 (Rev. 03/99)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose if initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

OWEN WEITZEL, a minor, by JEROME and MELISSA WEITZEL, as Parents and Natural Guardians, and JEROME and MELISSA WEITZEL Individually

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**

Cook County, IL

(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

1. GlaxoSmithKline LLC, formerly SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK")

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT New Castle County, DE

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Jamie L. Sheller, Esquire
Sheller, P.C.
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(215) 790-7300

Esther Berezofsky, Esquire
Williams Cuker Berezofsky
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
(856) 667-0500

**ATTORNEYS (IF KNOWN)**

Joseph E. O'Neil, Esquire
Carolyn L. McCormack, Esquire
Lavin, O'Neil, Ricci, Cedrone & DiSipio
190 N. Independence Mall West, Suite 500
6th and Race Streets
Philadelphia, PA 19106
(215) 627-0303

---

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV.  NATURE OF SUIT**      (PLACE AN X IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

*PERSONAL INJURY*
- ☐ 362 Personal Injury – Med Malpractice
- ☒ 365 Personal Injury – Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 442 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS – Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Arts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus:
- ☐ 520 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

---

**V.  ORIGIN**      (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Diversity case under 28. U.S.C. §1332, Plaintiff alleges injury as a result of use of pharmaceutical product manufactured by Defendant.

**VII. REQUESTED IN COMPLAINT:**

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $ From the injuries described in the Complaint, in excess of $75,000.00

Check YES only if demanded in complaint:

JURY DEMAND ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**      N/A      (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   2/14/13      SIGNATURE OF ATTORNEY OF RECORD
JOSEPH E. O'NEIL  ID No. 29053/ CAROLYN L. McCORMACK ID No. 87800

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA—DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignation to appropriate calendar.

Address of Plaintiff:                                    155 N. Harbor Drive, #5210, Chicago, IL 60601

Address of Defendant (GlaxoSmithKline):      1105 North Market Street, Suite 1300, Wilmington, DE 19801

Place of Accident, incident or Transaction:       Chicago, IL

*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more or more of its stock?

(attach two copies of the Disclosure Statement Form in accordance with the Fed.R.Civ.P.7.1.(a)    Yes ☐    No. ☒

Does this case involve multidistrict litigation possibilities?                                      Yes ☐    No ☒

RELATED CASE IF ANY

Case Number:    2:12-cv-01003-ER      Judge:    Eduardo C. Robreno          Date Terminated:

Civil cases are deemed related when "yes" is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?                                          Yes ☐    No ☒

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?              Yes ☒    No ☐

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                                                                                           Yes ☐    No ☒

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil case filed by the same individual?                                                              Yes ☐    No ☒

CIVIL: (Place ☒ in ONE CATEGORY ONLY)

A.  *Federal Question Cases:*

1.  ☐  Indemnity Contract, Marine Contract, and All Other Contracts
2.  ☐  FELA
3.  ☐  Jones Act—Personal Injury
4.  ☐  Antitrust
5.  ☐  Patent
6.  ☐  Labor-Management Relations
7.  ☐  Civil Rights
8.  ☐  Habeas Corpus
9.  ☐  Securities Act(s) Cases
10. ☐  Social Security Review Cases
11. ☐  All other Federal Question Cases
     (Please specify _____ )

B.  *Diversity Jurisdiction Cases:*

1.  ☐  Insurance Contract and Other Contracts
2.  ☐  Airplane Personal Injury
3.  ☐  Assault, Defamation
4.  ☐  Marine Personal Injury
5.  ☐  Motor Vehicle Personal Injury
6.  ☐  Other Personal Injury (Please specify): Negligence
7.  ☒  Products Liability
8.  ☐  Products Liability—Asbestos
9.  ☐  All other Diversity Cases
     (Please specify)

# ARBITRATION CERTIFICATION

*(Check appropriate category)*

I, __Joseph E. O'Neil, Esquire__ counsel of record, do hereby certify:

☒  Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

☐  Relief other than monetary damages is sought.

DATE: 2/14/13      *(signature)*                          29053
                   JOSEPH E. O'NEIL          *Attorney-at-Law*          *Attorney ID#*

**NOTE:**   A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/14/13      *(signature)*                          29053
                   JOSEPH E. O'NEIL          *Attorney-at-Law*          *Attorney ID#*

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA—DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignation to appropriate calendar.

Address of Plaintiff: _____ 155 N. Harbor Drive, #5210, Chicago, IL 60601 _____

Address of Defendant (GlaxoSmithKline): _____ 1105 North Market Street, Suite 1300, Wilmington, DE 19801 _____

Place of Accident, incident or Transaction: _____ Chicago, IL _____
*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more or more of its stock?

(attach two copies of the Disclosure Statement Form in accordance with the Fed.R.Civ.P.7.1.(a)   Yes ☐   No. ☒

Does this case involve multidistrict litigation possibilities?   Yes ☐   No ☒

RELATED CASE IF ANY

Case Number: _____ 2:12-cv-01003-ER _____   Judge: _____ Eduardo C. Robreno _____   Date Terminated: _____

Civil cases are deemed related when "yes" is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☒   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil case filed by the same individual?   Yes ☐   No ☒

CIVIL: (Place ☒ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act—Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify _____ )

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify): Negligence
7. ☒ Products Liability
8. ☐ Products Liability—Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate category)*

I, _____ Joseph E. O'Neil, Esquire _____ counsel of record, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

☐ Relief other than monetary damages is sought.

DATE: 2/14/13   *[signature]* Joseph E O'Neil   29053
  JOSEPH E. O'NEIL   *Attorney-at-Law*   *Attorney ID#*

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/14/13   *[signature]* Joseph E O'Neil   29053
  JOSEPH E. O'NEIL   *Attorney-at-Law*   *Attorney ID#*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| OWEN WEITZEL, A MINOR, BY JEROME AND MELISSA WEITZEL, AS PARENTS AND NATURAL GUARDIANS, AND JEROME AND MELISSA WEITZEL INDIVIDUALLY | : | |
| Plaintiffs | : | No. |
| v. | : | |
| SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : | |
| Defendant | : | |

      In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS

(a)    Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255. ☐

(b)    Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ☐

(c)    Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ☐

(d)    Asbestos—Cases involving claims for personal injury or property damage from exposure to asbestos. ☐

(e)    Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ☐

(f)    Standard Management – Cases that do not fall into any one of the other tracks. ☒

| | | |
|---|---|---|
| _2/14/13_ | _Joseph E. O'Neil_ | GlaxoSmithKline LLC formerly SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") Attorney for Defendant |
| Date | Joseph E. O'Neil, Esquire Carolyn L. McCormack, Esquire | |
| | | joneil@lavin-law.com |
| (215) 627-0303 | (215) 627-2551 | cmccormack@lavin-law.com |
| Telephone | Fax Number | E-mail Address |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OWEN WEITZEL, a minor, by JEROME**<br>**and MELISSA WEITZEL as Parents and**<br>**Natural Guardians, and JEROME and**<br>**MELISSA WEITZEL Individually** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | **Civil Action No.:** |
| | : | |
| **SMITHKLINE BEECHAM**<br>**CORPORATION d/b/a**<br>**GLAXOSMITHKLINE** | : | |
| | : | |
| **Defendant.** | : | |

## <u>NOTICE OF REMOVAL</u>

Defendant GlaxoSmithKline LLC, formerly SmithKline Beecham Corporation d/b/a

GlaxoSmithKline ("GSK LLC"), named defendant in the above-captioned matter, pursuant to 28

U.S.C. §§ 1441 and 1446, hereby removes this case from the Court of Common Pleas of

Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of

Pennsylvania, respectfully showing as follows:

1.

On or about January 17, 2013, Plaintiffs Owen Weitzel, Jerome Weitzel, and Melissa

Weitzel ("Plaintiffs") filed a Civil Action Short-Form Complaint ("Short-Form Complaint") in

the consolidated Paxil Pregnancy litigation before the Honorable Arnold L. New in the

Philadelphia Court of Common Pleas Mass Tort Program, <u>In re Paxil Pregnancy Cases</u>, February

Term 2007, No. 3220 ("Paxil Pregnancy MTP").[1]

---

[1] Pursuant to Case Management Order No. 1 in the Paxil Pregnancy MTP, all newly filed cases in the Philadelphia Court of Common Pleas are initiated by the filing of a Short-Form Complaint, which incorporates by reference the Plaintiff's General Master Long-Form Complaint ("Long-Form Complaint"), filed on March 7, 2007. (<u>See</u> Long-Form Complaint, ¶ 1) (attached as Exhibit A).

2.

Plaintiffs' Short-Form Complaint initiated the civil action styled <u>Owen Weitzel, a minor,</u> <u>by Jerome and Melissa Weitzel as Parents and Natural Guardians, and Jerome and Melissa</u> <u>Weitzel Individually v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline,</u> January Term 2013, No. 01789.

3.

GSK received Plaintiffs' Short-Form Complaint on January 18, 2013.

4.

Accordingly, this Notice is timely as it was filed within thirty (30) days after receipt of Plaintiffs' Short-Form Complaint and within one year of the commencement of Plaintiffs' action. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and accompanying documents served on GSK LLC are attached hereto as Exhibit B, which is incorporated herein by reference.

5.

The Short-Form Complaint asserts claims predicated on Melissa Weitzel's alleged use of Paxil®, paroxetine hydrochloride ("Paxil"), a prescription medication manufactured by GSK LLC and approved by the United States Food and Drug Administration ("FDA").

6.

By filing this Notice of Removal, GSK LLC does not waive any jurisdictional or other defenses that might be available to it.

7.

As explained below, this Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, and the action may be removed to this Court under 28 U.S.C. §1441 because there is complete diversity of citizenship between Plaintiffs and GSK LLC, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP

8.

Defendant GSK LLC is a limited liability company.  The sole member of Defendant GSK LLC is GlaxoSmithKline Holdings (Americas) Inc. ("GSK Holdings"), a corporation.

9.

For purposes of diversity jurisdiction, determining the citizenship of Defendant GSK LLC is a two-step process.  First, under the Third Circuit's ruling in Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010), the citizenship of a limited liability company, such as Defendant GSK LLC, is determined by looking to the citizenship of the limited liability company's members -- in this case, GSK Holdings, a corporation.  Second, under the Supreme Court's ruling in Hertz Corp. v. Friend, 130 S. Ct. 1181, 1185-86 (2011), a corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business, as determined by the "nerve center" test.

10.

Applying this two-step analysis here, Defendant GSK LLC is solely a citizen of Delaware.  First, under Zambelli, Defendant GSK LLC's citizenship is determined by the citizenship of its sole member, GSK Holdings.  Second, under Hertz, GSK Holdings is solely a

citizen of Delaware:  GSK Holdings is incorporated under Delaware law; GSK Holdings'

officers direct, control, and coordinate the work of GSK Holdings primarily in Delaware; GSK

Holdings' "nerve center" is therefore in Delaware.  Because Delaware is both GSK Holdings'

state of incorporation and the location of its nerve center, GSK Holdings is solely a citizen of

Delaware.  Therefore, Defendant GSK LLC also is solely a Delaware citizen.

11.

Judge Mary McLaughlin followed this two-step analysis in White v. SmithKline

Beecham Corp., No. 10-2241, 2010 U.S. Dist. LEXIS 79520, *8-9 (E.D. Pa. Aug. 5, 2010).  She

held that GSK LLC is a citizen of Delaware, the State of the "nerve center" of its sole member,

GSK Holdings.  See White, 2010 U.S. Dist. LEXIS 79520, at *5-9 ("The question before the

Court, therefore, is the location of GSK Holdings' principal place of business . . . [u]nder Hertz,

therefore, GSK Holdings' principal place of business is in Delaware").  Judge Paul Diamond also

applied this two-step analysis and held that GSK LLC is solely a citizen of Delaware.  See

Johnson v. SmithKline Beecham Corp. et al., 853 F. Supp. 2d 487, 491 (E.D. Pa. 2012)

("Because GSK LLC's sole member is Holdings, its citizenship is determined by that of

Holdings."); see also id. at 495 ("Holdings's nerve center is where its ownership decisions are

made: Wilmington.  Accordingly, Holdings and LLC are Delaware citizens.").

12.

Judge Royce Lamberth, the Chief Judge for the district court in the District of Columbia,

also applied this two-step analysis and reached the same result.  See Hoch v. Eli Lilly & Co., 736

F. Supp. 2d 219, 221 (D.D.C. 2010) (reasoning that "[t]he plaintiffs mistakenly treat GSK LLC

as a corporation, applying the nerve center test to GSK LLC rather than to its sole member, GSK

4

Holdings" and concluding that there is "sufficient evidence that GSK Holdings' nerve center is in Delaware").

13.

In <u>Brewer v. SmithKline Beecham Corp.</u>, 774 F. Supp. 2d 721 (E.D. Pa. 2011), and <u>Maldonado v. SmithKline Beecham Corp.</u>, 841 F. Supp. 2d 890 (E.D. Pa. 2011)[2], however, Judge Timothy Savage created a new rule that intermixed elements of the <u>Hertz</u> and <u>Zambelli</u> rules. <u>Brewer</u>, 774 F. Supp. 2d at 728-29; <u>Maldonado</u>, 841 F. Supp. 2d at 894. To determine **GSK Holdings'** principal place of business, Judge Savage wrongly "look[ed] to the **'nerve center'** of the **limited liability company**." <u>Brewer</u>, 774 F. Supp. 2d at 722, 728-29 (emphasis added); <u>Maldonado</u>, 841 F. Supp. 2d at 894. In other words, instead of focusing on GSK Holdings' nerve center, Judge Savage erroneously focused on the "nerve center" of its subsidiary, GSK LLC. Applying this new rule, Judge Savage found that GSK LLC was a citizen of Pennsylvania. Judge Joel Slomsky, Judge C. Darnell Jones, and Judge Curtis C. Joyner have followed Judge Savage. See <u>Murray v. SmithKline Beecham Corp. et al.</u>, No. 11-3510, 2012 U.S. Dist. LEXIS 47029, at *3 (E.D. Pa. Mar. 29, 2012) (finding that GSK LLC is a citizen of Pennsylvania); <u>Yeatts v. SmithKline Beecham Corp. et al.</u>, No. 11-6711, 2012 U.S. Dist. LEXIS 46979, at *6-7 (E.D. Pa. Mar. 29, 2012) (same); <u>Fay v. SmithKline Beecham Corp. et al.</u>, No. 12-4482 (E.D. Pa. Oct. 18, 2012 Order, Dkt. # 14) (same).

---

[2] Twenty-seven cases were subject to the remand order in <u>Maldonado</u>. On December 14, 2011, Judge Savage entered an order identical to <u>Maldonado</u> and remanded nine additional Paxil cases. See <u>Patton v. SmithKline Beecham Corp.</u>, No. 11-5965, 2011 U.S. Dist. LEXIS 143724 (E.D. Pa. Dec. 14, 2011). Judge Savage subsequently entered orders remanding six additional Paxil cases that were consolidated before him without further opinion. See <u>Cheslock v. SmithKline Beecham Corp.</u>, No. 11-5966 (Dec. 27, 2011 Order, Dkt. # 11), <u>Ellison v. SmithKline Beecham Corp.</u>, No. 11-2823 (Jan. 3, 2012 Order, Dkt. # 42), <u>Rader v. SmithKline Beecham Corp.</u>, No. 11-6637 (Jan. 4, 2012 Order, Dkt. # 11), <u>Deminsky v. SmithKline Beecham Corp.</u>, No. 11-6957 (Mar. 13, 2012 Order, Dkt. # 27), <u>Byrd v. SmithKline Beecham Corp.</u>, No. 7065 (Mar. 13, 2012 Order, Dkt. # 27), and <u>Nichols v. SmithKline Beecham Corp.</u>, No. 7066 (Mar. 13, 2012 Order, Dkt. # 37). Judge Savage also entered an order remanding a case involving a different GSK product, also without further opinion. See <u>Pryslak v. SmithKline Beecham Corp., et al.</u>, No. 12-4481 (Sept. 17, 2012 Order, Dkt. # 10).

14.

In blending the Hertz and Zambelli rules, the court in Brewer and Maldonado improperly disregarded the distinction between GSK Holdings and GSK LLC.  It is well-established in this Circuit that where, as here, corporate formalities are maintained, citizenship determinations must be based solely on the attributes of the *entity in question*.  See Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp., 461 F.2d, 1140, 1142 (3d Cir. 1972) ("[W]here the corporate separation between a parent and a subsidiary, though perhaps merely formal, is real and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent exerts a high degree of control through ownership or otherwise." (internal quotation marks omitted)); see also, e.g., Johnson, 853 F. Supp. 2d at 494 (declining to follow Brewer and Maldonado and rejecting argument that the activities of GSK LLC can be used to determine GSK Holdings' citizenship and reasoning that"[t]he law suggests just the opposite") (collecting cites); Destech Publications, Inc. v. Port City Press, Inc., No. 11-5461, 2011 U.S. Dist. LEXIS 138493, at *6 (E.D. Pa. Dec. 1, 2011); EverNu Tech., LLC v. Rohm & Haas Co., No. 10-2635, 2010 U.S. Dist. LEXIS 88921, at *5-6 (E.D. Pa. Aug. 26, 2010); Stewart v. Precision Airmotive Corp., No. 07-1610, 2007 U.S. Dist. LEXIS 74194, at *7 (E.D. Pa. Oct. 3, 2007); Holly Farms Corp. v. Taylor, 722 F. Supp. 1152, 1158 (D. Del. 1989). As Judge Diamond explained, the citizenship test used in Brewer and Maldonado "would effectively construe all holding companies out of existence and contravene Hertz." Johnson, 853 F. Supp. 2d at 495.  See also Dalton v. Georgia-Pacific LLC, No. 1:12-415, 2012 U.S. Dist. LEXIS 79867, at *19 (D.S.C. May 4, 2012) (reviewing the Brewer and Johnson decisions, declining to follow Brewer, and noting that Judge Diamond determined in Johnson that "Brewer

6

created the exact result that <u>Hertz</u> sought to avoid"); <u>Jennings v. HCR ManorCare Inc.</u>, No. 2:12-cv-01397, 2012 U.S. Dist. LEXIS 142800, at *13 (D.S.C. Oct. 3, 2102) (same).[3]

15.

A straight-forward application of the two-step analysis leads to the conclusion that GSK LLC is solely a citizen of Delaware.  <u>Johnson</u>, 853 F. Supp. 2d at 495; <u>White</u>, 2010 U.S. Dist. LEXIS 79520, at *8-9; <u>Hoch</u>, 736 F. Supp. 2d at 221.

16.

GSK LLC was not at the time of the commencement of this action or at any time thereafter a citizen of the State of Illinois.

17.

At the time this action was commenced, Plaintiffs were citizens and residents of the State of Illinois.  (Short-Form Complaint, ¶ 2.)

18.

Therefore, complete diversity of citizenship exists between Plaintiffs and Defendant GSK LLC.

## <u>RESIDENT-DEFENDANT RULE</u>

19.

Removal of this action is not barred by the resident-defendant rule set forth in 28 U.S.C. § 1441(b) because GSK LLC is not a citizen of Pennsylvania (the state in which this action was brought), but rather is a citizen of Delaware.

---

[3]  <u>See also</u> Exhibit C, GSK's Opposition to Plaintiffs' Motion to Remand filed in <u>Yazzie v. GlaxoSmithKline LLC</u>, No. 12-1006 (Dkt. # 23) (responding to the <u>Brewer</u> and <u>Maldonado</u> opinions and further explaining why Judge Diamond correctly held in <u>Johnson</u> that GSK LLC is a citizen of Delaware and that <u>Brewer</u> and <u>Maldonado</u> cannot be reconciled with well-settled law).

### AMOUNT-IN-CONTROVERSY

20.

Plaintiffs assert claims against GSK LLC under the following sixteen (16) theories: (1) breach of express warranty; (2) breach of implied warranty; (3) fraud; (4) intentional infliction of emotional distress; (5) loss of consortium; (6) negligence; (7) negligence *per se*; (8) negligent pharmacovigilance; (9) failure to warn; (10) negligent misrepresentation; (11) punitive damages; (12) strict products liability; (13) violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law; (14) loss of income; (15) medical expenses; and (16) design defect. Each cause of action seeks damages for injuries allegedly caused by ingestion of Paxil. (Short-Form Complaint, ¶ 7.)

21.

The Short-Form Complaint alleges that Melissa Weitzel took Paxil while she was pregnant with Owen Weitzel.  (See id. at ¶ 3.)

22.

Plaintiffs allege that Melissa Weitzel's ingestion of Paxil caused Owen Weitzel to develop a congenital birth defect.  (See id. at ¶ 5.)

23.

Plaintiffs allege that as a direct and proximate result of Melissa Weitzel's ingestion of Paxil, Owen Weitzel suffered and will continue to suffer physical injury and has sustained economic damages, including medical expenses, loss of earnings and earning capacity, loss of enjoyment of life, and shortened life expectancy.  (See Long-Form Complaint, ¶¶ 103-05, 110).

24.

Plaintiffs further allege that Owen Weitzel has and continues to suffer economic damage in the form of pain and suffering, mental anguish, embarrassment and humiliation, disfigurement, and permanent and ongoing psychological damage. (See id. at ¶¶ 103-05, 107-09.) According to the Third Circuit Court of Appeals, "in personal injuries litigation the intangible factor of 'pain, suffering, and inconvenience' constitutes the largest single item of recovery, exceeding by far the out-of-pocket 'specials' of medical expenses and loss of wages." Nelson v. Keefer, 451 F.2d 289, 294 (3d Cir. 1971), quoted in Ciancaglione v. Sutherlin, No. Civ.A.04-CV-2249, 2004 WL 2040342, *3 (E.D. Pa. Sept. 13, 2004).

25.

Plaintiffs allege that GSK LLC's actions were "performed willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public" such that they are entitled to punitive or exemplary damages. (Id. at ¶ 114-15; see also Short-Form Complaint, ¶ 7.)

26.

Plaintiffs selected "More than $50,000" as the amount-in-controversy on the Civil Cover Sheet filed with their Short-Form Complaint. Where a complaint does not limit its request to a precise monetary amount, the district court makes "an independent appraisal of the value of the claim." Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d Cir. 1993). In such a case, the party seeking removal need only demonstrate by a preponderance of the evidence that the amount-in-controversy exceeds $75,000.00. Frederico v. Home Depot, 507 F.3d 188, 194-96 (3d Cir. 2007). The amount-in-controversy may be evidenced by demonstrating that the claims, as asserted in the plaintiff's complaint, are likely above the jurisdictional minimum. See id. at 197.

27.

Claims similar to those asserted by Plaintiffs have been held to establish, on their face, that the amount-in-controversy exceeds the jurisdictional requirement.  See, e.g., Masterson v. Apotex Corp., 07-61665-CIV, 2008 WL 2047979, *3 (S.D. Fla. May 13, 2008) (in case alleging birth defects caused by generic paroxetine, court concluded that sufficient evidence existed that the amount-in-controversy exceeded $75,000 based upon allegations in complaint of congenital birth defects and "pain and suffering, mental anguish, embarrassment, humiliation, disfigurement, loss of enjoyment of the pleasure of life, as well as past and future general and specific damages, including future medical care" arising from the birth defects); Phillips v. Severn Trent Envtl. Servs., Inc., No. 07-3889, 2007 WL 2757131, *2 (E.D. La. Sept. 19, 2007) (amount-in-controversy requirement of $5 million, per CAFA, met in class action based upon size of class and "categories of serious damages", including birth defects, mental anguish, and present and future medical expenses); see also Varzally v. Sears, Robuck & Co., 09-CV-6137, 2010 WL 3212482, *2 (E.D. Pa. July 30, 2010) (allegations in product liability complaint met amount-in-controversy requirement because a "reasonable reading of plaintiff's claims suggests that he could recover in excess of $75,000 for damages sustained as a result of ongoing 'medical problems'").

28.

In other cases involving allegations of congenital defects, juries in Pennsylvania and other jurisdictions nationwide have awarded plaintiffs in excess of $75,000 in damages.  See, e.g., White v. Behlke, No. 03 CV 2663 (Pa. Com. Pl., 45th Judicial Dist., Lackawanna Co. Nov. 17, 2008) (awarding $20.5 million in damages for birth defects caused by defendant doctor's malpractice); see also Estrada v. Univ. of South Fla. Board of Trustees, No. 06-CA-000625 (Fla.

Cir., Hillsborough Co. July 23, 2007) (awarding $23.55 million in damages as a result of a

doctor's malpractice that resulted in plaintiff's child being born with birth defects); McCarell v.

Hoffman-LaRoche Inc., No. ATL-L-1951-03-MT (N.J. Super., Atlantic Co., May 29, 2007)

(awarding $2.619 million as a result of the defendant manufacturer's alleged failure to

adequately warn about the risk of birth defects associated with its acne drug); Lindstrom v. Han,

No. 1994-L-013821 (Ill. Cir., Cook Cnty. March 20, 2000) (awarding $4,502,312 verdict for

doctor's negligent treatment of plaintiff during the first trimester of pregnancy, which caused

child to be born with a birth defect); Tobin v. Astra Pharmaceutical, Inc., No. 88-0350-L(CS) (D.

Ky. March 8, 1991) (awarding $4,508,399 to compensate plaintiff for congestive heart failure

and heart transplant allegedly caused by use of defendant's prescription medication during

pregnancy).

29.

Given the nature and extent of Plaintiffs' injuries and damages as alleged in the Short-

Form Complaint, the amount-in-controversy exceeds $75,000.00, exclusive of interests and

costs.  See Angus, 989 F.2d at 146 ("[T]he amount in controversy is not measured by the low

end of an open-ended claim, but rather by a reasonable reading of the value of the rights being

litigated."); State Farm Mut., Auto. Ins. Co. v. Tz'doko V'CHESED of Klausenberg, 543 F.

Supp. 2d 424, 432 n.5 (E.D. Pa. 2008) (same).

**PROPRIETY OF REMOVAL**

30.

As set forth above, six judges of this District have considered the issue of GSK LLC's

citizenship and reached conflicting results.  Given the importance of the issue and recognizing

the need for guidance from the Third Circuit, three of the judges who recently considered the

11

issue of GSK LLC's citizenship — Judge Diamond, Judge Jones, and Judge Slomsky — agreed to issue their orders on the same day and simultaneously to certify this issue to the Third Circuit for interlocutory appeal. See Johnson, 853 F. Supp. 2d at 498; Murray, 2012 U.S. Dist. LEXIS 47029, at *4; Yeatts, 2012 U.S. Dist. LEXIS 46979, at *8. As 28 U.S.C. § 1447(d) bars appellate review of the remand orders entered by Judge Jones and Judge Slomsky in Murray and Yeatts, the parties in Johnson have filed petitions for interlocutory appeal of Judge Diamond's decision denying remand. See Plaintiffs-Appellants Petition for Leave to Appeal filed in Johnson v. SmithKline Beecham Corp., et al., No. 12-8033 (3d Cir. Apr. 9, 2012); GSK Defendants' Petition for Permission to Appeal Under 28 U.S.C. § 1292(b) filed in Johnson v. SmithKline Beecham Corp., et al., No. 12-8034 (3d Cir. Apr. 9, 2012). The Third Circuit granted permission to appeal in the Johnson case on May 22, 2012. See Order dated May 22, 2012 in Johnson v. SmithKline Beecham Corp., et al., 3d Cir. No. 12-2561.

31.

As Judge McLaughlin and Judge Diamond found in White, and Johnson, this Court has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332, and removal of this action to this Court is not barred by the resident-defendant rule set forth in 28 U.S.C. § 1441(b) because GSK LLC is not a citizen of Pennsylvania. See White, 2010 U.S. Dist. LEXIS 79520, at *8-9; Johnson, 853 F. Supp. 2d at 495.

32.

The United States District Court for the Eastern District of Pennsylvania is the federal judicial district encompassing the Court of Common Pleas of Philadelphia County, Pennsylvania, where Plaintiffs originally filed this suit such that this is the proper federal district for removal of this case to federal court.  See 28 U.S.C. § 1441(a).

33.

Accordingly, the present lawsuit may be removed from the Court of Common Pleas of Philadelphia County, Pennsylvania, and brought before the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

34.

Pursuant to 28 U.S.C. § 1446(d), GSK LLC will promptly file a copy of this Notice of Removal with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania, and will serve a copy of same upon counsel for Plaintiffs.

35.

GSK LLC reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, GSK LLC prays that this Notice of Removal be filed; that said action bearing docket number January Term 2013, 001789, from the Court of Common Pleas of Philadelphia County, Pennsylvania, be removed to and proceed in this Court; and that no further proceedings be had in said case in the Court of Common Pleas of Philadelphia County, Pennsylvania.

This 14th day of February, 2013.

Respectfully submitted,

**LAVIN O'NEIL RICCI CEDRONE & DISIPIO**

By: _Joseph E O'Neil_

Joseph E. O'Neil, Esquire (ID No. 29053)
Carolyn L. McCormack, Esquire (ID No. 87800)
Suite 500
190 North Independence Mall West
6th & Race Street
Philadelphia, PA  19106
(215) 627-0303
(215) 627-2551 (facsimile)

Attorneys for Defendant GlaxoSmithKline LLC, formerly SmithKline Beecham Corporation d/b/a GlaxoSmithKline

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served a copy of the foregoing **NOTICE OF REMOVAL** by depositing a copy of the same in the U.S. Mail, first-class, postage prepaid, and addressed as follows:

SHELLER, P.C.
Jamie L. Sheller, Esquire
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102

WILLIAMS CUKER BEREZOFSKY
Esther Berezofsky, Esquire
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002

**Counsel for Plaintiffs**

This 14th day of February, 2013.

Carolyn L. McCormack

# Exhibit A

03/07/07   17:35 FAX 215 751 5139          GlaxoSmithKline Legal   → KAREN KARPINSKI       ☑001

*HAND SERVED Lobby*
*March 7, 2007*
*4:20 pm*
*B. Weber*

Court of Common Pleas of Philadelphia County
Trial Division

**003220**

For Prothonotary Use Only (Docket Number)

## Civil Cover Sheet   JURY FEE PAID          FEBRUARY 2007

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| IN RE: PAXIL PREGNANCY CASES | SmithKline Beecham Corporation |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | One Frankline Plaza |
| | Philadelphia              PA      19102-1225 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| | 1 | ☑ Complaint    ☐ Petition Action    ☐ Notice of Appeal |
| | | ☐ Writ of Summons    ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☑ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☑ More than $50,000.00 | ☐ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | | |

CASE TYPE AND CODE (SEE INSTRUCTIONS)

Paxil MTP TK

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

None

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)          IS CASE SUBJECT TO COORDINATION ORDER?

|  | Yes | No |
|---|---|---|
| | ☐ | ☐ |
| February 2007 Master Docket No. 3220 | ☐ | ☐ |
| | ☐ | ☐ |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Cara J. Luther, Esq. (Baum Hedlund, APC) | 1500 Market Street, 12th Floor, East Tower |
| | Philadelphia              PA      19102-2107 |
| PHONE NUMBER          FAX NUMBER | E-MAIL ADDRESS |
| (215) 666-5659          (215) 569-9228 | cluther@baumhedlundlaw.com |
| SUPREME COURT IDENTIFICATION NO. | |
| 52545 | |
| SIGNATURE     *Cara J. Luther* | DATE     March 5, 2007 |

Ronald L.M. Goldman, Esq.
Karen Barth Menzies, Esq.
Jennifer R. Liakos, Esq.
Baum + Hedlund, A Professional Corporation
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
Telephone: 310.207.3233
Facsimile: 310.207.4204

Cara J. Luther, Esq. (52545)
Baum + Hedlund, A Professional Corporation
1500 Market Street, 12th Floor, East Tower
Philadelphia, Pennsylvania 19102
Telephone: 215.665.5659
Facsimile: 215.569.8228

**ATTEST**

MAR  7 2007

M. SIMMONS
PRO. PROTHY

**This is not an arbitration matter.
Assessment of damages hearing is
required**

*Attorneys for Plaintiffs*

|  |  |
|---|---|
| IN RE: PAXIL PREGNANCY CASES | **COURT OF COMMON PLEAS
TRIAL DIVISION
OF PHILADELPHIA COUNTY**

**FEBRUARY TERM, 2007**

**MASTER DOCKET NO. 3220**

**JURY TRIAL DEMANDED** |

## Notice To Defend

### NOTICE

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral and Information Service
Philadelphia Bar Association
1101 Market Street – 11th Floor
Philadelphia, PA 19107
(215) 238-1701

### AVISO

USTED HA SIDO DEMANDAMO/A EN LA CORTE. Si usted desea defender contra las demandas puestas en las siguientes páginas, usted tiene que tomar acción dentro de veinte (20) días después que esta demanda y Aviso es servido, con entrando por escrito una apariencia personalmente o por un abogado y archivando por escrito con la Corte sus defensas u objeciones a las demandas puestas en contra usted. Usted es advertido que si falla de hacerlo el caso puede proceder sin usted y una sentencia puede ser entrado contra usted por la Corte sin más aviso por cualquier dinero reclamado en la Demanda o por cualquier otro reclamo o alivio solicitado por el Demandante. Usted puede perder dinero o propiedad o otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VIYA EN PERSONA OR LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA É INFORMACIÓN LEGAL
1101 Market Street – 11th Floor
Philadelphia, PA 19107
(215) 238-1701

Ronald L.M. Goldman, Esq.
rgoldman@baumhedlundlaw.com
Karen Barth Menzies, Esq.
kbmenzies@baumhedlundlaw.com
Jennifer R. Liakos, Esq.
Jliakos@baumhedlundlaw.com
Baum ♦ Hedlund, A Professional Corporation
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
Telephone: 310.207.3233
Facsimile: 310.207.4204

Cara J. Luther, Esq.
cluther@baumhedlundlaw.com
Attorney ID # 52545
Baum ♦ Hedlund, A Professional Corporation
1500 Market Street, 12th Floor, East Tower
Philadelphia, Pennsylvania 19102
Telephone: 215.665.5659
Facsimile: 215.569.8228

Attorneys for Plaintiffs

IN RE: PAXIL PREGNANCY CASES

**COURT OF COMMON PLEAS
PHILADELPHIA COUNTY**

**FEBRUARY TERM, 2007**

**MASTER DOCKET NO.: 3220**

**PLAINTIFFS' GENERAL
MASTER LONG-FORM
COMPLAINT, AND JURY
DEMAND**

Pursuant to an Order by the Honorable Paul P. Panepinto, the undersigned attorneys for plaintiffs in the "Paxil Pregnancy" actions bring this Master General Long-Form Complaint against the defendant, SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline (hereinafter "GSK").

<u>PLAINTIFFS</u>

1.      Pursuant to the Order of this Court, this Complaint is a Master Complaint filed for all plaintiffs in the "Paxil Pregnancy Cases." All allegations pleaded herein are deemed pleaded in any "Short-Form" Complaint hereafter filed.

1

2.     The "Infant Plaintiffs" or "Decedents" referred to herein are minor children who were born with congenital birth defects, heart defects, PPHN and/or other related conditions or who suffered from various pulmonary disorders as a result of their mothers, ("Mother Plaintiffs") taking Paxil during their pregnancies. The Infant Plaintiffs are represented in these actions by their parents, ("Parent Plaintiffs") who are their next of friend pursuant to Pa. R.C.P. No 2026.

3.     The "Mother Plaintiffs" referred to herein are competent adults and the mothers of the Infant Plaintiffs or Decedents in these actions.  They bring these actions individually and on behalf of their minor children or as the Personal Representative of the estate of their deceased infant children to recover medical and other expenses related to treatment resulting from their child's birth defect, disorder and/or related illnesses and general and special damages.

4.     The "Father Plaintiffs" referred to herein are competent adults and the fathers of the Infant Plaintiffs or Decedents in these actions.  They bring these actions individually and on behalf of their minor children or as the Personal Representative of the estate of their deceased infant children to recover medical and other expenses relating to treatment resulting from their child's birth defect, disorder and/or related illnesses and general and special damages.

5.     "Plaintiffs" as used herein refers to the Infant Plaintiffs, Mother Plaintiffs and Father Plaintiffs collectively.

## DEFENDANT

6.     Defendant GSK. was and still is a corporation duly existing under and by virtue of the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. At all times, defendant GSK. was, and still is, a pharmaceutical company involved in research, development, testing, manufacture, production, promotion, distribution, and marketing of pharmaceuticals for distribution, sale, and use by the general public throughout the United States, including the drug Paxil (known generically as paroxetine), an antidepressant.

2

## JURISDICTIONAL ALLEGATIONS

7.    Jurisdiction is proper because GSK is a Pennsylvania corporation. Venue is proper in this District because GSK resides in this county for venue purposes and a substantial part of the events and omissions giving rise to Plaintiffs' injuries occurred in this District. *See* Pa.R.C.P. 2179, as amended by 2003 Pennsylvania Court Order 8.

## GENERAL ALLEGATIONS

8.    The drug "paroxetine" is manufactured, promoted, distributed, labeled and marketed by GSK under the trade name Paxil, Paxil Oral Suspension, and Paxil CR (hereinafter "Paxil"), and is a member of a class of drugs known as "selective serotonin reuptake inhibitors" or "SSRIs." Paxil was first approved for use in the United States by the FDA in 1992 for the treatment of depression in adults.

9.    The Mother Plaintiffs took Paxil as prescribed by their treating physicians while pregnant.

10.    When the Infant Plaintiffs were born they were suffering from life-threatening congenital defects and/or began to suffer from persistent pulmonary hypertension of the newborn ("PPHN"), a life-threatening disorder in which the newborn's arteries to the lungs remain constricted after delivery, limiting the amount of blood flow to the lungs and therefore the amount of oxygen into the bloodstream, or began to suffer from a similar life-threatening pulmonary condition.

11.    The defects suffered by the Infant Plaintiffs were a direct result of his/her mother's ingestion of Paxil during her pregnancy in a manner and dosage recommended and prescribed by her doctor.

12.    Prior to the Mother Plaintiffs becoming pregnant, GSK knew or should have known that children were being born with congenital birth defects, heart defects, PPHN and other related conditions to women who took Paxil during pregnancy.

13.    Prior to the Mother Plaintiffs becoming pregnant, GSK knew or should have known that taking Paxil during pregnancy poses risks to the developing fetus. GSK knew or should have

3

known that Paxil crosses the placenta, which could have important implications for the developing

fetus.

14.    Prior to the time that the Mother Plaintiffs ingested Paxil during their pregnancy, GSK knew or should have known that Paxil posed an increased risk of congenital birth defects, heart defects, PPHN and other related conditions.

15.    During the entire time Paxil has been on the market in the United States, FDA regulations have required GSK to issue stronger warnings whenever there existed reasonable evidence of an association between a serious risk and Paxil. The regulations specifically state that a causal link need not have been proven to issue the new warnings. Further, the regulations explicitly allowed GSK to issue such a warning without prior FDA approval.

16.    Thus, prior to the Mother Plaintiffs' pregnancies, GSK had the knowledge, the means and the duty to provide the medical community and the consuming public with a stronger warning regarding the association between Paxil and congenital birth defects, heart defects, PPHN and other related conditions, through all means necessary including but not limited to labeling, continuing education, symposiums, posters, sales calls to doctors, advertisements and promotional materials, etc. GSK breached this duty.

17.    Plaintiffs filed this lawsuit within the applicable limitations period of first suspecting that said drugs were the cause of Plaintiffs' injuries and/or Decedent's death. Plaintiffs could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Paxil-induced injuries and deaths at an earlier time because at the time of the these injuries and/or deaths the cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, the cause of these injuries and/or deaths, or the tortious nature of the conduct causing these injuries and deaths, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiffs were prevented from discovering this information sooner because the Defendant herein misrepresented and continue to misrepresent to the public and to the medical profession that the

4

drugs are safe to take during pregnancy and Defendant has fraudulently concealed facts and information that could have led Plaintiffs to discover a potential cause of action.

## COUNT I

## NEGLIGENCE & NEGLIGENCE PER SE

18.    Plaintiffs repeat and reiterate the allegations set forth above.

19.    At all times mentioned herein, GSK was under a duty to exercise reasonable care in researching, manufacturing, selling, merchandising, advertising, marketing, promoting, labeling, testing, distributing and analyzing Paxil to ensure that Paxil's use did not result in avoidable injuries.

20.    Plaintiffs' injuries as described herein were caused by the negligence and misrepresentations of GSK though its agents, servants and/or employees acting within the course and scope of their employment including among other things:

(a)    Carelessly and negligently researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing, distributing, and marketing Paxil;

(b)    Failing to fully disclose the results of the testing and other information in its possession regarding the possibility that Paxil can interfere with the proper development of an unborn fetus;

(c)    Failing to continually monitor, test and analyze data regarding safety, efficacy and prescribing practices of its marketed drugs, including Paxil;

(d)    Being careless and negligent in that GSK knew or should have known that Paxil was a substance that would be actively transported through the placenta during pregnancy and could inhibit the health and development of the fetus;

(e)    Negligently and carelessly failing to adequately warn the medical community, the general public and Plaintiffs of the dangers of using Paxil during pregnancy;

5

 (f) Negligently and carelessly representing that Paxil was safe for use during pregnancy, when in fact, GSK knew or should have known that it was unsafe for this use;

 (g) Negligently and carelessly promoting Paxil as safe and effective for use with pregnant women when, in fact, it was unsafe;

 (h) Negligently and carelessly failing to act as a reasonably prudent drug manufacturer;

 (i) Negligently and carelessly over-promoting Paxil in a zealous and unreasonable way, without regard to the potential danger that it poses for an unborn fetus;

 (j) GSK promoted Paxil for use with pregnant women despite the fact that GSK knew or should have known that Paxil is associated with an increased risk of congenital abnormalities and pulmonary disorders.

 21. Furthermore, GSK's negligence was an un-excused breach of statutory duty established by federal regulations because Plaintiffs have suffered from the kind of harm the regulations were designed to prevent and Plaintiffs are members of the particular class of persons that those regulations were set out to protect.

 22. At all times herein mentioned, upon information and belief, the above-described culpable conduct by GSK was a proximate cause of Plaintiffs' injuries. GSK knew or should have known that Paxil is dangerous and unsafe for pregnant women and the developing fetus.

 23. The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general

6

and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

24.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

25.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial, and other costs pertaining to their Decedent's death in an amount to be ascertained.

26.    As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

27.    The forgoing actions of the Defendant were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

/ / /

/ / /

/ / /

7

## COUNT II

## NEGLIGENT PHARMACO-VIGILANCE

28.    Plaintiffs repeat and reiterate the allegations set forth above.

29.    GSK has an ongoing duty of pharmaco-vigilance. As part of this duty, GSK is required to continually monitor, test and analyze data regarding the safety, efficacy and prescribing practices of its marketed drugs, including Paxil. GSK continually receives reports from its own clinical trials, practicing physicians, individual patients and regulatory authorities of adverse events that occur in patients taking Paxil and its other marketed drugs. Furthermore, GSK continues to conduct clinical trials for its marketed drugs long after the drug is approved for use. GSK has a duty to inform doctors, regulatory agencies and the public of new safety and efficacy information it learns, or should have learned, about its marketed drugs once that information becomes available to GSK, whether through GSK clinical trials, other outside sources or pharmaco-vigilance activities. Specifically, when GSK learns, or should have learned, of new safety information associated with its marketed drugs, it has a duty to promptly disseminate that data to the public. GSK also has a duty to monitor epidemiological and pharmaco-vigilance data regarding its marketed drugs and promptly report any safety concerns that arise through epidemiologic study or data.

30.    GSK breached its duty with respect to Plaintiffs. GSK, through various sources, including but not limited to, clinical trials and other adverse event reports, learned that there was a substantial risk of congenital birth defects, heart defects, PPHN and other related conditions, associated with Paxil use during pregnancy and failed to inform doctors, regulatory agencies and the public of this risk. GSK had the means and the resources to perform its pharmaco-vigilance duties for the entire time Paxil has been on the market in the United States.

31.    The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained pecuniary

8

loss resulting from the pain and suffering caused by their congenital birth defects, heart defects, PPHN and/or other related conditions, by the surgeries and procedures they have already undergone, and the surgeries and procedures that they will need to undergo in the future, as well as their inability to enjoy their life as a normal child without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

32.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

33.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

34.    As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

35.    The forgoing actions of the Defendant were actions as described herein, were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT III

## STRICT LIABILITY

36.  Plaintiffs repeat and reiterate the allegations set forth above.

37.  GSK manufacturers and/or supplies Paxil and is strictly liable to Plaintiffs for designing, creating, manufacturing, marketing, labeling, distributing, selling and placing into the stream of commerce the product Paxil.

38.  The product Paxil, manufactured and/or supplied by GSK, was defective in design or formulation, in that, when it left the hands of the manufacture and/or supplier, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other antidepressants.

39.  The product, Paxil, that was manufactured and/or supplied by GSK, was defective in design or formulation in that, when it left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design or formulation.

40.  The product Paxil, manufactured and/or supplied by GSK, was defective due to inadequate warnings or instructions because the manufacturer knew or should have known that the product created, among other things, when taken during pregnancy, a significant increased risk of congenital birth defects, heart defects, PPHN and/or other related conditions and abnormal development of the unborn child and GSK failed to adequately warn of said risks.

41.  The Paxil that was manufactured and/or supplied by GSK was defective due to inadequate pre-market testing.

42.  The Paxil that was manufactured and/or supplied by GSK was defective due to GSK's failure to provide adequate initial warnings and post-marketing warnings or instruction after GSK knew or should have known of the risk of increased risk of congenital birth defects, heart

10

defects, PPHN and/or other related conditions and abnormal development of the unborn child from the use of Paxil during pregnancy and continued to promote the product.

43.     The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

44.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

45.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

46.     As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

11

47.    The forgoing actions of GSK were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT IV

### FAILURE TO WARN
#### (Restatement Second of Torts §388)

48.    Plaintiffs repeat and reiterate the allegations set forth above.

49.    At all times herein mentioned, Paxil was unsafe for use by pregnant women and GSK knew or should have known said product was unsafe.

50.    At all times herein mentioned, using Paxil during pregnancy was associated with a significantly increased risk of serious congenital birth defects, heart defects, PPHN and/or other related conditions and GSK knew or should have known that said product is unsafe when taken during pregnancy because of the said effects.

51.    At all times hereinafter mentioned and before the Mother Plaintiffs' ingestion of Paxil during their pregnancy, neither members of the medical community nor members of the general public knew the dangers existed with respect to Paxil's association with congenital birth defects, heart defects, PPHN and/or other related conditions.

52.    The Mother Plaintiffs used Paxil in the manner in which GSK intended it to be used.

53.    The Mother Plaintiffs used or otherwise ingested Paxil in the amount and manner and for the purpose recommended by GSK.

54.    At all times material hereto, U.S.-marketed Paxil was not accompanied by complete and proper warnings for safe, informed use. Specifically, the labeling accompanying Paxil did not warn physicians in general, or Plaintiffs in particular, of the dangers inherent in its use, particularly of the drug's association with congenital birth defects, heart defects, PPHN and/or other related

conditions. Further, the labeling failed to adequately inform physicians in general, or Plaintiffs in particular, of Paxil's association with a significantly increased risk of congenital birth defects, heart defects, PPHN and/or other related conditions if a woman ingests Paxil during her pregnancy and oversold Paxil's benefits, thus depriving physicians of necessary information needed to perform an adequate risk/benefit analysis. Furthermore, GSK failed to adequately warn doctors and the medical community of this dangerous risk using the other mediums at its disposal, including, but not limited to, medical journal articles, sales representatives, Dear Doctor letters, presentations, conferences, medical school information and all of its promotional material and activities.

55.     GSK promoted and maintained Paxil on the market with the knowledge of Paxil's unreasonable risk to the public in general and specifically to Plaintiffs.

56.     Paxil, as used by the Mother Plaintiffs during their pregnancy, was defective and unreasonably dangerous when sold by GSK, who is liable for the injuries arising from its manufacture and the Mother Plaintiffs' use.

57.     The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

58.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

59.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss if their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

60.     As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

61.     The forgoing actions of the Defendant were actions as described herein, were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNTS V & VI

## BREACH OF EXPRESS AND IMPLIED WARRANTY

62.     Plaintiffs repeat and reiterate the allegations set forth above.

63.     At all times hereinafter mentioned, upon information and belief, GSK, by directly and indirectly advertising, marketing and promoting Paxil for the treatment of women during pregnancy and by placing this drug in the stream of commerce knowing that Paxil would be prescribed to pregnant women in reliance upon the representations of GSK, expressly warranted to all foreseeable

14

users of the drug, including the Mother Plaintiffs, that Paxil was safe and effective for the treatment of women during pregnancy and without significant risk to the fetus.

64.    GSK impliedly warranted in manufacturing, distributing, selling, advertising, marketing and promoting Paxil to all foreseeable users, including the Mother Plaintiffs, that Paxil was safe and effective for the purposes for which it had been placed in the stream of commerce by GSK, including for the treatment of pregnant women, and that Paxil was reasonably safe, proper, merchantable and fit for the intended purpose, including for the treatment of pregnant women and without significant risk to the fetus.

65.    That at all time hereinafter mentioned, the Mother Plaintiffs relied upon the aforesaid express and implied warranties by GSK.

66.    That at all times hereinafter mentioned, the Mother Plaintiffs' use of Paxil was consistent with the purposes for which GSK directly and indirectly advertised, marketed and promoted Paxil, and the Mother Plaintiffs' use of Paxil was reasonably contemplated, intended, and foreseen by GSK at the time of the distribution and sale of Paxil by GSK, and, therefore, the Mother Plaintiffs' use of Paxil was within the scope of the above-described express and implied warranties.

67.    GSK breached the aforesaid express and implied warranties because Paxil was not safe and effective for the treatment of women during pregnancy because it exposed the developing fetus to a significant risk of serious injury, and because the Mother Plaintiffs' use of Paxil for treatment during her pregnancy caused their child's congenital birth defects, heart defects, PPHN and/or other related conditions.

68.    The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital

15

birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

69. As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

70. As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support, and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

71. As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

72. The forgoing actions of GSK were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs and the public's safety and welfare.

WHEREFORE, for the above reasons, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

///

///

16

## COUNT VII

## FRAUD

73.    Plaintiffs repeat and reiterate the allegations set forth above.

74.    GSK, having undertaken the manufacturing, marketing, dispensing, distribution and promotion of Paxil described herein, owed a duty to provide accurate and complete information regarding these products.

75.    GSK's advertising program, by affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Paxil was safe for human use; had no, or no unacceptable side effects; had fewer side effects than other antidepressants; and would not interfere with daily life.

76.    On information and belief, GSK purposefully concealed, failed to disclose, misstated, downplayed and understated the health hazards and risks associated with the use of Paxil. GSK through promotional literature, deceived potential users and prescribers of said drug by relying on only allegedly positive information, including testimonials from allegedly satisfied users, and manipulating statistics to suggest widespread acceptability, while concealing, misstating and downplaying the known adverse and serious health effects. GSK falsely and deceptively kept relevant information from potential Paxil users and minimized prescriber concerns regarding the safety and efficacy of Paxil.

77.    In particular, in the materials disseminated by GSK, GSK falsely and deceptively misrepresented or omitted a number of material facts regarding the previously stated allegations including, but not limited to, the following:

    (a)    The presence and adequacy of testing of Paxil, and

    (b)    The severity and frequency of adverse congenital birth defects, heart defects, PPHN and/or other related conditions caused by a mother taking Paxil during pregnancy.

78.    The aforementioned misrepresentations by GSK were reasonably relied upon by the Mother Plaintiffs and/or their prescribing physicians to their detriment.

79.    The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

80.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

81.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial and other costs pertaining to their Decedent's death in an amount to be ascertained.

82.    As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

83.    The forgoing actions of GSK were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT VIII

## LOSS OF CONSORTIUM AND LOSS OF INCOME

84.    Plaintiffs repeat and reiterate the allegations set forth above.

85.    As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

86.    As a result of the wrongful conduct by GSK described herein, the Parent Plaintiffs of the Decedents suffered a loss of love, society, comfort, affection, companionship, services, and moral support in an amount to be determined at trial.  Furthermore, as a result of the wrongful conduct by GSK described herein, the Parent Plaintiffs suffered a loss of income in an amount to be determined at trial.

## COUNT IX

## CAUSE OF ACTION FOR SURVIVAL

87.    Plaintiffs repeat and reiterate the allegations set forth above.

88.    As a direct and proximate result of the wrongful conduct of GSK as described herein, the Parent Plaintiffs' of the Decedents children suffered great pain and suffering and other personal injury and damaged before their death.

89.    As a direct and proximate result of the conduct alleged herein, before their death, the Decedents sustained damages according to proof.

19

## COUNT X

## NEGLIGENT DESIGN

90.   Plaintiffs repeat and reiterate the allegations set forth above.

91.   GSK was the manufacturer, seller, distributor, marketer, and/or supplier of Paxil, which was negligently designed.

92.   GSK was negligent in developing, designing, processing, manufacturing, inspecting, testing, packaging, selling, distributing, supplying, marketing and promoting Paxil which was defective and presented an unreasonable risk of harm to consumers. Paxil was negligently designed in ways which include, but are not limited to, one or more of the following:

(a)   When placed in the stream of commerce, Paxil contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiffs, to risks which exceeded the benefits of the drug;

(b)   Paxil was insufficiently tested;

(c)   Paxil caused harmful side effects that outweighed any potential utility;

(d)   Paxil was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, of the potential risks and serious side effects associated with its use.

(e)   In light of the potential and actual risk of harm associated with Paxil's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Paxil should not have been marketed in that condition.

(f)   GSK was under a duty to act for the protection of consumers, such as Plaintiffs.  GSK owed a duty to consumers to exercise reasonable care in

20

developing, designing, processing, manufacturing, inspecting, testing, packaging, selling, distributing, supplying, marketing and promoting Paxil, and defendant breached that duty by the conduct as alleged herein.

(g)   GSK knew or should have known that use of Paxil as intended imposed unreasonable risks to the health of consumers and the unborn fetuses of pregnant consumers. GSK knew of the grave risks caused by their products from investigation and testing performed by themselves or others, or, to the extent they did not fully know of those risks, it was because they unreasonably failed to perform appropriate, adequate and proper investigations and tests that would have disclosed those risks.

(h)   GSK's conduct described above was grossly negligent in that their actions involved willful and reckless conduct and were carried out with disregard for the unreasonable risk of Paxil and its potential for harm to consumers and the fetuses of pregnant consumers.

93.   The Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as well as past and future general and special damages, including future medical care and treatment, in a sum in excess of the jurisdictional minimum of this Court.

94.   As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs have incurred loss of consortium, general, special and medical damages and related expenses in an amount in excess of the jurisdictional minimum of this Court.

95.     As a direct and proximate result of the aforesaid conduct of GSK, the Parent Plaintiffs of the Decedents have sustained pecuniary loss resulting from the loss of their child's society, companionship, comfort, attention, protection, care, love, affection, advice, services, moral support, economic support and general and special damages in a sum in excess of the jurisdictional minimum of this Court. As a further proximate result of GSK's conduct, the Parent Plaintiffs of the Decedents have incurred expenses for funeral, burial, and other costs pertaining to their Decedent's death in an amount to be ascertained.

96.     As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

97.     The forgoing actions of GSK were actions as described herein, were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT XI

## WRONGFUL DEATH

98.     Plaintiffs repeat and reiterate the allegations set forth above.

99.     As a direct and proximate result of the aforesaid, because of their mothers' ingestion of Paxil during their pregnancy, the Decedents developed congenital birth defects, heart defects, PPHN and/or other related conditions which caused extreme pain, suffering and mental anguish and ultimately caused their death.

22

100.   As a direct and proximate result of the aforesaid conduct of GSK, the Decedents sustained pecuniary loss resulting from the pain and suffering from their congenital malformations and/or pulmonary conditions, by the surgeries and procedures they underwent between the time of their birth and their death and additional general and special damages in a sum in excess of the jurisdictional minimum of this Court.

101.   The forgoing actions of GSK were actions as described herein, were intentional, malicious, wanton, willful or oppressive or were done with gross negligence and reckless indifference to the Plaintiffs, and the public's safety and welfare.

WHEREFORE, Plaintiffs demand judgment in their favor and against GSK for an amount in excess of $50,000.00, compensatory and punitive damages and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT XII

## DAMAGES

102.   Plaintiffs repeat and reiterate the allegations set forth above.

103.   As a direct and proximate result of the negligence, strict liability, failure to warn, implied warranty, breach of express and implied warranties, fraud, as described in Counts I-XI *supra*, the Infant Plaintiffs suffer from physical injuries, the full extent of which have not yet been determined, some or all of which are permanent and/or fatal, and the Infant Plaintiffs may suffer in the future from other diseases or conditions which have not yet been diagnosed. As a direct and proximate result of the aforesaid conduct of GSK, the Infant Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, disfigurement and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, heart defects, PPHN and/or other related conditions, as set forth in each Plaintiff's "Short-Form" Complaint to be filed.

104.   As a direct and proximate result of the aforesaid, Plaintiffs were obliged to spend various sums of money to treat their congenital birth defects, heart defects, PPHN and/or other

23

related conditions and Plaintiffs continue to be obliged for the expenses of same, as a direct and proximate result of the aforesaid, Plaintiffs have sustained a loss of earnings and earning capacity; and as a direct and proximate result of the aforesaid, the Infant Plaintiffs' enjoyment of life has been impaired and the Infant Plaintiffs' life expectancies shortened, all to Plaintiffs' great loss.

105.   As a direct and proximate result of the aforesaid, the Infant Plaintiffs have undergone great physical pain and mental anguish.

106.   As a direct and proximate result of the aforesaid, the Decedents sustained great physical pain and mental anguish as a result of their congenital birth defects, heart defects, PPHN and/or other related conditions and the surgeries and procedures they underwent between the time of their birth and their death in an attempt to treat those defects and/or conditions.

107.   As a direct and proximate result of the aforesaid, and since the Plaintiffs first learned of the Infant Plaintiffs injuries, Plaintiffs have developed severe anxiety, hysteria or phobias, and or all of which have developed into a reasonable and traumatic fear of an increased risk of additional injury and or progression of the existing conditions(s).

108.   As a direct and proximate result of the aforesaid, Plaintiffs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and or medical treatment.

109.   As a direct and proximate result of the aforesaid, Plaintiffs have and will continue to suffer a disintegrations and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

110.   As a direct and proximate result of the aforesaid, the Decedents and the Injured Plaintiffs incurred and will continue to incur hospital, nursing and medical expenses. Decedents' beneficiaries have incurred hospital, medical and funeral expenses as a result of Decedents' deaths. The Plaintiff Parents of the Decedents' bring these claims as the Personal Representatives of the Estates of the Decedents on behalf of the Decedents' lawful beneficiaries for the damages and pecuniary losses sustained by said beneficiaries.

24

## COUNT XII
## PUNITIVE DAMAGES

111.    Plaintiffs repeat and reiterate the allegations set forth above.

112.    The Plaintiffs are entitled to punitive damages because GSK's failure to warn was reckless and without regard for the public's safety and welfare. GSK misled both the medical community and the public at large, including the Plaintiffs herein, by making false representations about the safety of Paxil. GSK downplayed, understated and/or disregarded its knowledge of the serious effects of taking Paxil during pregnancy despite available information demonstrating that Paxil was likely to cause serious and sometimes fatal congenital birth defects, heart defects, PPHN and/or other related conditions in unborn children when taken during pregnancy.

113.    GSK was or should have been in the possession of evidence demonstrating that Paxil caused congenital birth defects, heart defects, PPHN and/or other related conditions in unborn children when taken during pregnancy. Nevertheless, it continued to market the products by providing false and misleading information with regard to safety and efficacy.

114.    GSK's above described actions were performed willfully, intentionally and with reckless disregard for the rights of Plaintiffs and the public.

115.    Accordingly, Plaintiffs seek and are entitled to punitive or exemplary damages in an amount to be determined at trial.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against GSK as follows:

A.      For general damages in a sum exceeding this court's jurisdictional minimum;

B.      For damages for loss of consortium;

C.      For reasonable medical expenses according to proof;

D.      For all damages as allowed by law;

E.      For prejudgment interest and post-judgment interest as allowed by law;

F.      For delay damages pursuant to Pa. R.C.P. No. 238;

G.   For punitive and exemplary damages as allowed by law;

H.   For the costs of suit herein incurred; and

I.   For such other and further relief as this Court may deem just and proper.


Dated: March 5, 2007                      Respectfully Submitted,


_____
Cara Luther (P.S.B. #52545)
cluther@baumhedlundlaw.com
BAUM + HEDLUND, A Professional Corporation
1500 Market Street, 12th Floor, East Tower
Philadelphia, PA 19102
Telephone: 215.665.5659
Facsimile: 215.569.8228

Ronald L. M. Goldman, Esq.
rgoldman@baumhedlundlaw.com
Karen Barth Menzies, Esq.
kbmenzies@baumhedlundlaw.com
Jennifer R. Liakos, Esq.
jliakos@baumhedlundlaw.com
BAUM + HEDLUND, A Professional Corporation
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone: 310.207.3233
Facsimile: 310.207.4204

Clayton Clark, Esq.
Riley Burnett, Esq.
CLARK BURNETT, LLP
440 Louisiana (Lyric Center), 16th Floor
Houston, TX 77002
Telephone: 713.757.1400
Facsimile: 713.759.1217

Bryan Aylstock Esq.
AYLSTOCK, WITKIN & SASSER, P.L.C
4400 Bayau Blvd., Suite 58
Pensacola, FL 32503
Telephone: 281.272.0781
Facsimile: 850.916.7449


26

John T. Boundas, Esq.
jboundas@williamsbailey.com
WILLLIAMS BAILEY, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, TX 77017-5051
Phone: 1-800-220-9341 or 713-230-2200
Fax: 713-643-6226

Matthew E. Lundy
mlundy@lundydavis.com
LUNDY & DAVIS, L.L.P.
333 N. Sam Houston Parkway East, Suite 375
Houston, TX 77060
Phone: (281) 272-0797
Fax: (281) 272-0781

*Attorneys for Plaintiff*

### JURY TRIAL DEMAND

Plaintiffs herein invoke their right to a trial by a jury of 12 persons.

Dated: March 5, 2007

Respectfully Submitted,

*Cara J. Luther*

Cara J. Luther, Esq.

## ATTORNEY'S VERIFICATION

I, Cara J. Luther, Esq., hereby state:

1.    I am one of the Plaintiffs' attorneys in this action.

4.    I verify that the statements made in the foregoing Master Long-Form Complaint are true and correct to the best of my knowledge, information and belief; and

5.    I understand that the statements in said Complaint are subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Date: March  5 , 2007

Cara J. Luther, Esquire
Attorney ID # 52545
Baum ♦ Hedlund, A Professional Corporation
1500 Market Street, 12th Floor, East Tower
Philadelphia, Pennsylvania 19102
Telephone: 215.665.5659
Facsimile: 215.569.8228

**Attorney for Plaintiffs**

# Exhibit B



*Hand Served*
*1/18/13  9:25*
*Mr Gagliardi*

**NEW JERSEY OFFICE**

210 LAKE DRIVE EAST
SUITE 101
CHERRY HILL, NJ 08002
(609) 941-2596
FAX (215) 546-0942

1528 WALNUT STREET, 4th FLOOR
PHILADELPHIA, PA 19102
———————
(215) 790-7300 • (800) 883-2299
FAX (215) 546-0942
WEBSITE WWW.SHELLER.COM

OF COUNSEL

KENNETH W. SMITH, ESQUIRE
ALEXANDRIA, VA 22306

Jamie L. Sheller, Esquire
Email: jlsheller@sheller.com

January 18, 2013



**RECEIVED**

JAN 1 8 2013

**ANDREA L. PARRY**

***VIA HAND DELIVERY***

SmithKline Beecham Corporation d/b/a
GlaxoSmithKline
One Franklin Plaza
Philadelphia, PA 19102

> Re:  **Owen Weitzel, A Minor by Jerome and Melissa Weitzel as Parents and**
> **Natural Guardians and Jerome and Melissa Weitzel Individually v.**
> **SmithKlineBeecham Corporation d/b/a GlaxoSmithKline**
> **CCP-Philadelphia, January Term, 2013, No. 001789**

Dear Sir/Madam:

Enclosed is a time-stamped copy of a Short Form Complaint that has been served on you.

Very truly yours,

*Jamie L. Sheller/vl*

JAMIE L. SHELLER

JLS:vl
Enclosure

cc:  Esther Berezofsky, Esquire (w/enclosure via e-mail)

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **JANUARY 2013** | **001789** |
| E-Filing Number: 1301027611 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| OWEN WEITZEL | SMITHKLINE BEECHAM CORPORATION, ALIAS: GLAXOSMITHKLINE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 155 N. HARBOR DRIVE, #5210 CHICAGO IL 60601 | ONE FRANKLIN PLAZA PHILADELPHIA PA 19102 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MELISSA WEITZEL | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 155 N. HARBOR DRIVE, #5210 CHICAGO IL 60601 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JEROME WEITZEL | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 155 N. HARBOR DRIVE, #5210 CHICAGO IL 60601 | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 5 | 1 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal <br> [ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less <br> [X] More than $50,000.00 | [ ] Arbitration  [X] Mass Tort <br> [ ] Jury  [ ] Savings Action <br> [ ] Non-Jury  [ ] Petition <br> [ ] Other | [ ] Commerce <br> [ ] Minor Court Appeal <br> [ ] Statutory Appeals | [ ] Settlement <br> [ ] Minors <br> [ ] W/D/Survival |

**CASE TYPE AND CODE**

TK - MASS TORT - PAXIL-BIRTH DEFECT

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** <br> JAN **17** 2013 <br> **S. GARRETT** | IS CASE SUBJECT TO COORDINATION ORDER? <br> YES    NO |
|---|---|---|

**TO THE PROTHONOTARY.**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: OWEN WEITZEL , MELISSA WEITZEL , JEROME WEITZEL , MELISSA WEITZEL ,

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JAMIE L. SHELLER | SHELLER, P.C. <br> 1528 WALNUT STREET <br> 4TH FLOOR <br> PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)790-7300 | (215)546-0942 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 55722 | jlsheller@sheller.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| JAMIE SHELLER | Thursday, January 17, 2013, 02:26 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF PLAINTIFFS:**

1. JEROME WEITZEL
   155 N. HARBOR DRIVE, #5210
   CHICAGO IL 60601
2. MELISSA WEITZEL
   155 N. HARBOR DRIVE, #5210
   CHICAGO IL 60601
3. OWEN WEITZEL
   155 N. HARBOR DRIVE, #5210
   CHICAGO IL 60601
4. JEROME WEITZEL
   155 N. HARBOR DRIVE, #5210
   CHICAGO IL 60601
5. MELISSA WEITZEL
   155 N. HARBOR DRIVE, #5210
   CHICAGO IL 60601

**SHELLER, P.C.**
Jamie L. Sheller, Esquire
PA Attorney ID No. 55722
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(215) 790-7300 Telephone
(215) 546-0942 Facsimile

**WILLIAMS CUKER BEREZOFSKY**
Esther Berezofsky, Esquire
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
(856) 667-5133 Facsimile

This is Not an Arbitration Case. An
Assessment of Damages is Required.

*Attorneys for Plaintiffs*

| | |
|---|---|
| **Owen Weitzel, a minor, by Jerome and Melissa Weitzel as Parents and Natural Guardians, and Jerome and Melissa Weitzel Individually,**<br>**155 N. Harbor Drive, #5210**<br>**Chicago, IL  60601**<br><br>Plaintiffs,<br><br>vs.<br><br>**SmithKline Beecham Corporation d/b/a,**<br>**GlaxoSmithKline**<br>**One Franklin Plaza**<br>**Philadelphia, PA 19102-1225** | **COURT OF COMMON PLEAS**<br>**TRIAL DIVISION**<br>**PHILADELPHIA COUNTY**<br><br>**JANUARY TERM, 2013**<br><br>**NO:**_____<br><br>**In Re: Paxil Pregnancy Cases**<br><br>**JURY TRIAL DEMANDED** |

Defendant.

## NOTICE TO PLEAD

**NOTICE**  You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth

**AVISO**  Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las paginas siquientes, tiene veinte (20) dias a partir de recibir esta demanda notificacion para entablar personalmente o por un abogado una comparesencia escrita y tambien para entablar con la corte en forma escrita sus defensas y

Case ID: 130101789

against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER (OR CANNOT AFFORD ONE), GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. **PHILADELPHIA COUNTY BAR ASSOCIATION** LAWYER REFERRAL AND INFORMATION SERVICE 1101 MARKET STREET, 11TH FLOOR PHILADELPHIA, PENNSYLVANIA 19107 TELEPHONE:   (215) 238-1701

THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

objeciones a las demandas contra usted sin previo aviso para conseguir el deniro demandado en el pleito o para conseguir cualquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiendad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE.  SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO) VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL. ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO. **ASOCIACION DE LICENCIADOR DE PHILADELPHIA** VICIO DE REFERENCIA DE INFORMACION LEGAL 1101 MARKET STREET, 11TH FLOOR PHILADELPHIA, PENNSYLVANIA 19107 TELEFONO: (215) 238-1701

SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCION INFORMACION COBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOSE REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO.

2

Case ID: 130101789

**SHELLER, P.C.**
Jamie L. Sheller, Esquire
PA Attorney ID No. 55722
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(215) 790-7300 Telephone
(215) 546-0942 Facsimile

**WILLIAMS CUKER BEREZOFSKY**
Esther Berezofsky, Esquire
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
(856) 667-5133 Facsimile

**This is Not an Arbitration Case. An Assessment of Damages is Required.**

*Attorneys for Plaintiffs*

---

| | |
|---|---|
| **Owen Weitzel, a minor, by Jerome and Melissa Weitzel as Parents and Natural Guardians, and Jerome and Melissa Weitzel Individually,** <br> **155 N. Harbor Drive, #5210** <br> **Chicago, IL  60601** <br><br>          **Plaintiffs,** <br><br>         vs. <br><br> **SmithKline Beecham Corporation d/b/a, GlaxoSmithKline** <br> **One Franklin Plaza** <br> **Philadelphia, PA 19102-1225** <br><br>        **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **COURT OF COMMON PLEAS** <br>     **TRIAL DIVISION** <br>     **PHILADELPHIA COUNTY** <br><br>     **JANUARY TERM, 2013** <br><br>     **NO:_____** <br><br>     **In Re: Paxil Pregnancy Cases** <br><br>     **JURY TRIAL DEMANDED** |

### CIVIL ACTION SHORT-FORM COMPLAINT
### FOR PAXIL PREGNANCY CASES

Pursuant to the Order by the Honorable Paul P. Panepinto, Philadelphia County Court of

Common Pleas, the following Short Form Complaint is utilized in this mass tort action for cases

alleging that a child suffers from a congenital birth defect, from Persistent Pulmonary

Hypertension of the Newborn ("PPHN"), or other related or similar conditions, as a result of the

child's mother ingesting the prescription medication Paxil, Paxil OS or Paxil CR ("Paxil") during

her pregnancy (hereinafter "Paxil Pregnancy Cases"). Plaintiff(s) select(s) and indicate(s) the causes of action raised in his/her/their case by checking off the appropriate spaces corresponding to the causes listed herein. In the event that a cause not listed herein is being raised, or where a claim requires, pursuant to Pennsylvania law, specific pleading or case-specific facts, Plaintiff(s) shall add and include said cause or said pleading or facts by way of submitting a Supplemental Short Form Complaint as approved by the Court's Case Management Order.

## PARTIES

1. Plaintiff, Owen Weitzel, a minor by Melissa Weitzel and Jerome Weitzel as Parents and Natural Guardians against GSK.

2. A.    Minor Plaintiff:

   Name: Owen Weitzel

   Place of Birth: Northwestern Memorial Hospital

   State of Residence: Illinois

   Date of Birth: December 7, 1999

   Date of death: N/A

   B.    Guardians for Minor Plaintiff:

   Names: Melissa Weitzel and Jerome Weitzel

   State of Residence: Illinois

   Relationship to Minor Plaintiff: Mother and Father

   C.    Mother of Minor Plaintiff, Individually:

   Name: Melissa Weitzel

   State of Residence: Illinois

- 2 -

      D.    <u>Father of Minor Plaintiff, Individually:</u>

            Name: Jerome Weitzel

            State of Residence: Illinois

      E.    Wrongful Death Beneficiaries and/or Personal Representative of Estate of Minor,

            Plaintiff, Deceased: <u>N/A</u>

3.    Minor Plaintiff's mother ingested the following drugs relevant to this action for the described period:

| | |
|---|---|
| Paxil: | ☒ |
| Paxil CR: | ☐ |
| Paxil Oral Suspension: | ☐ |
| Dose (if known): | <u>20 mgs.</u> |

Reason for prescription (if known): <u>Depression</u>

4.    The prescribing physicians were: <u>Joseph DeRosa, M.D.</u>

5.    Minor Plaintiff was born with the following conditions: <u>ASD, VSD, Pulmonary Stenosis, Right Aortic Arch and conditions that may be accidentally omitted, conditions Plaintiff is unaware of, or conditions not yet diagnosed.</u>

6.    Plaintiff is an individual residing in Illinois and claims damages as a result of his mother's ingestion of Paxil during her pregnancy.

7.    The following claims are asserted herein:

| | | |
|---|---|---|
| ☒ | Count One: | Breach of Express Warranty |
| ☒ | Count Two: | Breach of Implied Warranty |
| ☒ | Count Three: | Fraud |

- 3 -

Case ID: 130101789

☒ Count Four:        Intentional Infliction of Emotional Distress

☒ Count Five:        Loss of Consortium

☒ Count Six:        Negligence

☒ Count Seven:        Negligence Per Se

☒ Count Eight:        Negligent Pharmacolvigilance

☒ Count Nine:        Failure to Warn

☒ Count Ten:        Negligent Misrepresentation

☒ Count Eleven:        Punitive Damages

☒ Count Twelve:        Strict Products Liability

☐ Count Thirteen:        Survival/Survivorship Action

☒ Count Fourteen:        Violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law

☐ Count Fifteen:        Wrongful Death

☒ Count Sixteen:        Loss of Income

☒ Count Seventeen:        Medical Expenses

☒ Count Eighteen:        Design Defect

Respectfully Submitted,

By: /s/ Jamie L. Sheller, Esquire
    PA Attorney ID No. 55722
    1528 Walnut Street, 4th Floor
    Philadelphia, PA 19102
    (215) 790-7300 Telephone
    (215) 546-0942 Facsimile

**WILLIAMS CUKER BEREZOFSKY**
Esther Berezofsky, Esquire
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
(856) 667-5133 Facsimile

- 4 -

Case ID: 130101789

If additional counts are alleged, the specific facts supporting these allegations must be pleaded by the plaintiff in the manner complying with the requirements of the Pennsylvania Rules of Civil Procedure on a Supplemental Short Form Complaint attached to this Short Form Complaint

Case ID: 130101789

**ATTORNEY'S VERIFICATION**

      I, Jamie Sheller, hereby state:

1.     I am one of the Plaintiffs' Attorneys in this action;

2.     I submit that, pursuant to Pa. R.C.P. No. 1024, I am a person having sufficient
3.     knowledge and belief to verify this pleading.

4.     Plaintiffs are outside the jurisdiction of this Court and the verifications cannot be
5.     obtained within the time allowed for filing.

6.     I verify that the statements made in the foregoing CIVIL ACTION SHORT FORM
      COMPLAINT are true and correct to the best of my knowledge, information and belief,
      and;

7.     I understand that the statements in the foregoing CIVIL ACTION SHORT FORM
      COMPLAINT are made subject to the penalties of 18 PA. C.S.A. § 4904 relating to the
      unsworn falsification to authorities.

Date: January _17_, 2013         By:_____

                              Jamie L. Sheller

Case ID: 130101789

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEISHA YAZZIE, a Minor, by TRICIA YAZZIE, Guardian and Individually | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | Civil Action No.: 2:12-cv-01006-LDD |
| GLAXOSMITHKLINE LLC, formerly SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT GLAXOSMITHKLINE LLC'S, FORMERLY SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     FACTUAL BACKGROUND....................................................................6

        A.    SKB Corporation Converted into GSK LLC to Facilitate HIV/AIDS Research....6

        B.    GSK LLC Was Formed as a "Manager-Managed" LLC...............................7

        C.    GSK Holdings' Functions Are Narrow and Straightforward.........................7

        D.    GSK Holdings Performs Its Limited Functions in Delaware.......................10

III.    ARGUMENT AND CITATIONS TO AUTHORITY.........................................13

        A.    Plaintiffs' Motion Should Be Denied Because GSK LLC Is A Delaware
              Citizen.................................................................................13

              1.    The Court Should Follow *Johnson*, Which Recognized That *Brewer* and
                    *Maldonado* Impermissibly Disregarded and Conflated the Separate
                    Corporate Identities of GSK LLC and GSK Holdings.......................13

              2.    The Court Should Not Follow *Brewer* and *Maldonado* Because
                    GSK LLC Was Formed as a "Manager-Managed" LLC....................20

              3.    GSK Holdings' "Nerve Center" Is in Delaware.............................26

              4.    Any Suggestion That GSK Holdings Is an "Artifice" or GSK LLC's
                    Post-Litigation Conduct Was Manipulation Is Misplaced..................29

              5.    Plaintiffs Rely on Irrelevant Facts and Inapposite Authority..............32

        B.    Although GSK Holdings' "Nerve Center" Is in Delaware, Strategic Input
              Emanating From Outside of Delaware Comes From London......................33

IV.     CONCLUSION................................................................................34

## TABLE OF AUTHORITIES

CASES                                                                          PAGE

*Abuhouran v. KaiserKane, Inc.*
   No. 10-6609, 2011 U.S. Dist. LEXIS 145910 (D.N.J. Dec. 19, 2011)..................................20

*Balachander v. AET Inc.*
   No. 10-4805, 2011 U.S. Dist. LEXIS 109787 (S.D. Tex. Sept. 27, 2011)..................28, 32

*Bartram, LLC v. C.B. Contrs., LLC*
   No. 1:09-cv-254-SPM/AK, 2010 U.S. Dist. LEXIS 92008 (N.D. Fla. Aug. 10, 2010) ..........20

*Bonar, Inc. v. Schottland*
   631 F. Supp. 990 (E.D. Pa. 1986)...............................................................16

*Brewer v. SmithKline Beecham Corp.*
   774 F. Supp. 2d 721 (E.D. Pa. 2011) ............................................................ passim

*Carden v. Arkoma Assocs.*
   494 U.S. 185 (1990)........................................................................18

*Chief Gathering LLC v. Watkins*
   No. 11-1760, 2011 U.S. Dist. LEXIS 113415 (M.D. Pa. Oct. 3, 2011)...................19

*Citadel Crossing Assocs., L.P. v. CentiMark Corp.*
   No. 11-2653, 2011 U.S. Dist. LEXIS 125164 (D. Colo. Oct. 27, 2011).........................20

*Cent. W. Va. Energy Co, Inc. v. Mountain State Carbon, LLC*
   636 F.3d 101 (4th Cir. 2011) .................................................................28

*De Walker v. Pueblo Int'l, Inc.*
   569 F.2d 1169 (1st Cir. 1978).................................................................15

*Destech Publications, Inc. v. Port City Press, Inc.*
   No. 11-5461, 2011 U.S. Dist. LEXIS 138493 (E.D. Pa. Dec. 1, 2011).....................14, 33

*Douglas v. Ryder Truck Lines, Inc.*
   597 F. Supp. 1100 (E.D. Pa. 1984)............................................................16

*EverNu Tech., LLC v. Rohm & Haas Co.*
   No. 10-2635, 2010 U.S. Dist. LEXIS 88921 (E.D. Pa. Aug. 26, 2010) ...................14

*Hart v. Terminex Int'l*
   336 F.3d 541 (7th Cir. 2003) .................................................................13

*Hertz Corp. v. Friend*
    130 S. Ct. 1181 (2010) ................................................................ passim

*Hoch v. Eli Lilly & Co.*
    736 F. Supp. 2d 219 (D.D.C. 2010) .......................................... passim

*Holly Farms Corp. v. Taylor*
    722 F. Supp. 1152 (D. Del. 1989) ......................................................15

*In re Hydroxycut Mktg. and Sales Practices Litig.*
    No. 09MD2087-BTM, 2010 U.S. Dist. LEXIS 76751 (S.D. Cal. July 29, 2010) .................29

*J.A. Olsen v. City of Winona, Miss.*
    818 F.2d 401 (5th Cir. 1987) ............................................................15

*Johnson v. SmithKline Beecham Corp., et al.,*
    No. 11-5782, 2011 U.S. Dist. LEXIS 44315 (E.D. Pa. Mar. 29, 2012)....................passim

*Kelly v. United States Steel Corp.*
    284 F.2d 850 (3d Cir. 1960)..............................................................33

*Lurie Co. v. Loew's San Francisco Hotel Corp.*
    315 F. Supp. 405 (N.D. Cal. 1970).....................................................14

*Maldonado v. SmithKline Beecham Corp.*
    No. 11-2812, 2011 U.S. Dist. LEXIS 142578 (E.D. Pa. Dec. 12, 2011) ........................ passim

*Mennen Co. v. Atl. Mut. Ins. Co.*
    147 F.3d 287 (3d Cir. 1998)..............................................................32

*Midlantic Nat. Bank v. Hansen*
    48 F.3d 693, 695 (3d Cir. 1995)....................................................25, 30

*Patton v. SmithKline Beecham Corp.*
    No. 11-5965, 2011 U.S. Dist. LEXIS 143724 (E.D. Pa. Dec. 14, 2011).........................1

*Poznanovich v. AstraZeneca Pharm. LP*
    No. 11-4001, 2011 U.S. Dist. LEXIS 142697 (D.N.J Dec. 12, 2011)..............................15, 16

*Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*
    461 F.2d (3d Cir. 1972)................................................................ passim

*Schwartz v. Elec. Data Sys., Inc.*
    913 F.2d 279 (6th Cir. 1990) ............................................................15

*Smith v. Sperling*
    354 U.S. 91, 93 (1957)................................................................25, 30

*Stewart v. Precision Airmotive Corp.*
   No. 07-1610, 2007 U.S. Dist. LEXIS 74194 (E.D. Pa. Oct. 3, 2007). ...................................15

*Swiger v. Allegheny Energy, Inc.*
   540 F.3d 179 (3d Cir. 2008)...............................................................................19

*Topp v. CompAir, Inc.*
   814 F.2d 830 (1st Cir. 1987) ..................................................................... passim

*White v. SmithKline Beecham Corp.*
   No. 10-2141, 2010 U.S. Dist. LEXIS 79520 (E.D. Pa. Aug. 5, 2010) ........................... passim

*Williams v. Braden Drilling, LLC*
   No. 11-2342, 2011 U.S. Dist. LEXIS 149640 (M.D. Pa. Dec. 30, 2011)...........................19

*Zambelli Fireworks Mfg. Co., Inc. v. Wood*
   592 F.3d 412 (3d Cir. 2010)...................................................................... passim

STATUTES

6 Del. Code § 18-214 ...............................................................................7

6 Del. Code § 18-402 ......................................................................... passim

6 Del. Code § 18-407 ......................................................................... passim

15 Pa. Cons. Stat. § 8959(a), (b) .................................................................6

28 U.S.C. §1332(c)(1)...........................................................................34

## I.    **INTRODUCTION**

Defendant GlaxoSmithKline LLC, formerly SmithKline Beecham Corporation d/b/a

GlaxoSmithKline ("GSK LLC") is filing herewith in this case a Motion to Stay this matter,

pending a decision by the Third Circuit Court of Appeals on the issue of GSK LLC's citizenship.

Subject to and without waiving that Motion to Stay, GSK LLC respectfully submits this

Opposition to Plaintiffs' Motion to Remand and requests oral argument.

A split exists in this District on the issue of GSK LLC's citizenship.  Judge McLaughlin

has held that GSK LLC is a citizen of Delaware.  *White v. SmithKline Beecham Corp.*, No. 10-

2141, 2010 U.S. Dist. LEXIS 79520, at *14-15 (E.D. Pa. Aug. 5, 2010); *see also Hoch v. Eli*

*Lilly & Co.*, 736 F. Supp. 2d 219, 221 (D.D.C. 2010) (also holding that GSK is a citizen of

Delaware).  Judge Savage subsequently allowed the parties to conduct additional jurisdictional

discovery and found that GSK LLC is a citizen of Pennsylvania.  *Brewer v. SmithKline Beecham*

*Corp.,* 774 F. Supp. 2d 721 (E.D. Pa. 2011).  Judge Savage recently reached the same result in

*Maldonado v. SmithKline Beecham Corp.*, No. 11-2812, 2011 U.S. Dist. LEXIS 142578 (E.D.

Pa. Dec. 12, 2011), after considering a record that was expanded beyond that in *Brewer*.[1]

Most recently, three additional judges of this District have ruled on GSK LLC's

citizenship and deepened the split.  Judge Paul S. Diamond, Judge C. Darnell Jones, II, and

Judge Joel H. Slomsky each individually issued rulings on GSK LLC's citizenship in cases

involving thalidomide and, like Judge McLaughlin and Judge Savage, reached conflicting

---

[1]    On December 14, 2011, Judge Savage entered an order identical to *Maldonado* and remanded nine additional Paxil cases.  *See Patton v. SmithKline Beecham Corp.*, No. 11-5965, 2011 U.S. Dist. LEXIS 143724 (E.D. Pa. Dec. 14, 2011).  Most recently, Judge Savage has entered separate remand orders in six additional cases without further reasoning.  *See Cheslock v. SmithKline Beecham Corp.*, No. 11-5966 (Dec. 27, 2011 Order, Dkt. # 11), *Ellison v. SmithKline Beecham Corp.*, No. 11-2823 (Jan. 3, 2012 Order, Dkt. # 42), *Rader v. SmithKline Beecham Corp.*, No. 11-6637 (Jan. 4, 2012 Order, Dkt. # 11), *Deminsky v. SmithKline Beecham Corp.*, No. 11-6957 (Mar. 13, 2012 Order, Dkt. # 27), *Byrd v. SmithKline Beecham Corp.*, No. 7065 (Mar. 13, 2012 Order, Dkt. # 27), and *Nichols v. SmithKline Beecham Corp.*, No. 7066 (Mar. 13, 2012 Order, Dkt. # 37).

results.  Judge Diamond found, as did Judge McLaughlin, that GSK LLC is a citizen of Delaware and that its removal was proper.  *See Johnson v. SmithKline Beecham Corp., et al.*, No. 11-5782, 2011 U.S. Dist. LEXIS 44315 (E.D. Pa. Mar. 29, 2012).  Judge Jones and Judge Slomsky agreed with Judge Savage that GSK LLC is a citizen of Pennsylvania and granted the plaintiffs' motions to remand.  *See Murray v. SmithKline Beecham Corp., et al.*, No. 11-3510 (Mar. 29, 2012 Order, Dkt. # 89) and *Yeatts v. SmithKline Beecham Corp., et al.*, No. 6711 (Mar. 29, 2012 Order, Dkt. # 58).  As a result, the split of authority in this District on the question of GSK LLC's citizenship not only remains but has deepened.[2]

Given the importance of the issue and recognizing the need for guidance from the Third Circuit, Judge Diamond, Judge Jones, and Judge Slomksy agreed to issue their orders on the same day and simultaneously to certify this issue to the Third Circuit for interlocutory appeal. *See Johnson*, 2012 U.S. Dist. LEXIS 44315, at *2-3; *Murray* Order at 2-3; *Yeatts* Order at 3. They also ordered that their respective cases be stayed pending appellate review.  *See Johnson*, 2012 U.S. Dist. LEXIS 44315, at *28; *Murray* Order at 3; *Yeatts* Order at 3.  As 28 U.S.C. § 1447(d) bars appellate review of the remand orders entered by Judge Jones and Judge Slomsky in *Murray* and *Yeatts*, the parties in *Johnson* have both filed petitions for interlocutory appeal of Judge Diamond's decision denying remand.  *See* Plaintiffs-Appellants Petition for Leave to Appeal filed in *Johnson v. SmithKline Beecham Corp., et al.*, No. 12-8033 (3d Cir. Apr. 9, 2012); GSK Defendants' Petition for Permission to Appeal Under 28 U.S.C. § 1292(b) filed in *Johnson v. SmithKline Beecham Corp., et al.*, No. 12-8034 (3d Cir. Apr. 9, 2012).

---

[2] Therefore, Plaintiffs' claim that GSK LLC has violated Federal Rule of Civil Procedure 11 by "removing cases, which this Court has already determined to be properly before the PCCP and not this Court" is baseless. (*See* Pls.' Mot. at 2.) GSK LLC's removal of this case was entirely proper given both the split of authority in this District and the absence of any Supreme Court or Third Circuit precedent addressing the precise jurisdictional issues raised in this case.

GSK LLC's separate Motion to Stay asks the Court to stay this matter pending the outcome of this interlocutory appeal. There is no difference between the jurisdictional question in this case and the issue in the thalidomide cases. There is thus no reason to treat this or any other Paxil case any differently than the thalidomide cases. Given the clear split of authority in this District and the fact that an orderly process has been put into place to resolve that split, this case should be stayed to maintain the integrity of that process, to prevent further prejudice to GSK LLC, and to allow the Third Circuit to decide the issue.

Although this case should be stayed to allow the Third Circuit to decide the issue of GSK LLC's citizenship, GSK LLC respectfully submits that *Brewer* and *Maldonado* were incorrectly decided, and that *White* and *Johnson* reached the correct result. The facts here require the straight-forward application of two settled rules: (1) the citizenship of a <u>limited liability company</u> is determined by that of its members, *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412 (3d Cir. 2010); and (2) the citizenship of a <u>corporation</u> is determined by the "nerve center" test, *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). In this case, the defendant GSK LLC is a limited liability company ("LLC"). GSK LLC's sole member is GlaxoSmithKline Holdings (Americas) Inc. ("GSK Holdings"). GSK Holdings is a corporation.

Accordingly, (1) under *Zambelli*, GSK LLC's citizenship is determined by that of its sole member, GSK Holdings, and (2) under *Hertz*, GSK Holdings' citizenship is determined by locating its "nerve center," which is "where [the] corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1192. Because GSK Holdings' officers direct, control, and coordinate GSK Holdings' activities primarily from Delaware, (*see infra* Section II.D.), GSK Holdings is a Delaware citizen, and by extension GSK LLC is also a Delaware citizen. *See Johnson,* 2012 U.S. Dist. LEXIS 44315, at *7-8 (applying this two step analysis and

holding that GSK LLC is solely a citizen of Delaware); *White*, 2010 U.S. Dist. LEXIS 79520, at

*5-9 (same).

In *Brewer*, however, the Court "meld[ed]" the *Zambelli* and *Hertz* rules together to create

a new rule. *Brewer*, 774 F. Supp. 2d at 728-29. Based on the perception that GSK LLC

presented an "anomal[ous]" situation (i.e., "a limited liability company whose sole member is a

holding company that does not direct or control the operations of the limited liability company"),

the *Brewer* court fashioned a new rule that "look[s] to the *'nerve center'* of the **limited liability**

**company** to which the holding company has delegated the operational decision-making" in

determining the **holding company's** principal place of business. *Id.* at 722, 729 (emphasis

added).[3]

Although *Maldonado* sought to clarify *Brewer's* statement that it had "melded" the rules

for the citizenship of LLCs and corporations, GSK respectfully submits that the *Maldonado* court

continued to misapply those tests. The *Maldonado* court reasoned that if the *Zambelli* and *Hertz*

tests do not "meld," they "intersect," leading to the same result. *Maldonado*, 2011 U.S. Dist.

LEXIS 142578, at *16. Accordingly, to determine the principal place of business of the

corporation, **GSK Holdings**, the *Maldonado* court wrongly persisted in looking for the *"nerve*

*center"* of its subsidiary LLC, **GSK LLC**. *Id.* at *24. As the *Johnson* court explained in

declining to follow *Brewer* and *Maldonado*, the citizenship test used in those cases "would

effectively construe all holding companies out of existence and contravene *Hertz*." *Johnson*,

2012 U.S. Dist. LEXIS 44315, at *17.

---

[3] A "holding company" is one that is organized to own assets, such as interest in another company. (*See* Declaration of Jonathan A. Macey ("Macey Decl.") (Ex. A) at ¶ 28.) It is distinguished from an "operating company," which is organized to produce goods or services. As its name implies, GSK Holdings is a holding company.

In short, *Zambelli* and *Hertz* are separate tests that apply to different business entities. A straight-forward application of these tests does not result in a test that "intersects" any more than it does a test that "melds." Instead, *Zambelli* governs the first step in the analysis of GSK LLC's citizenship, and *Hertz* governs the second step. *White* and *Johnson* correctly applied the *Zambelli* and *Hertz* rules as set forth by the Third Circuit and the Supreme Court; *Brewer*'s "meld[ed]" rule, and *Maldonado*'s "intersect[ed]" rule, each impermissibly blends elements of the *Zambelli* and *Hertz* rules together. A straight-forward application of *Zambelli* and *Hertz* to the facts here compels the conclusion that the parties in this case are completely diverse because GSK LLC is solely a citizen of Delaware and Plaintiffs are not citizens of Delaware.[4] And because GSK LLC is not a citizen of Pennsylvania, removal is not barred by the forum-defendant rule.

As noted above, Judge Diamond has certified the question of GSK LLC's citizenship to the Third Circuit, and the parties have petitioned the Third Circuit for interlocutory review. Although this case should be stayed to allow the Third Circuit to decide the issue, to the extent that this Court does consider the substance of Plaintiffs' motion to remand, GSK LLC respectfully submits that *Brewer* and *Maldonado* were incorrectly decided, and that *White* and *Johnson* reached the correct result.

---

[4] Plaintiffs' contention that "as of the date of filing, GSK was an active, domestic corporation with its principal place of business in Philadelphia, according to the Pennsylvania Department of State", (Pls' Mot. at 3), is incorrect. The document that Plaintiffs cite is not for SKB Corporation and does not state that SKB Corporation is an active Pennsylvania corporation. (*See* Ex. 1 to Pls.' Mot.) Moreover, Plaintiffs acknowledge two pages later that GSK converted from a Pennsylvania corporation into a Delaware LLC in 2009. (*See* Pls.' Mot. at 5.) The Pennsylvania Department of State records correctly reflect this. (*See* Pennsylvania Department of State record reflecting that GSK LLC registered as a Delaware LLC in October 2009 (Ex. B).)

## II.   FACTUAL BACKGROUND

**A.   SKB Corporation Converted into GSK LLC to Facilitate HIV/AIDS Research.**

In October 2009, SmithKline Beecham Corporation d/b/a GlaxoSmithKline became an

LLC named GlaxoSmithKline LLC ("GSK LLC"). Previously, SmithKline Beecham

Corporation ("SKB Corporation") had been a corporation incorporated under Pennsylvania law.

Then, on October 27, 2009, SKB Corporation underwent two conversions. First, it converted

from a Pennsylvania corporation into a Delaware corporation. Second, on the same day, it

converted from a Delaware corporation into a Delaware LLC.

The purpose of this dual conversion was not to change its citizenship for jurisdictional

purposes. Rather, the conversions were made so that SKB Corporation's ultimate parent could

enter into a joint venture with Pfizer called ViiV Healthcare ("ViiV") to research and develop

new treatments for HIV/AIDS. (Declaration of Julian Heslop ("Heslop Decl.") at ¶ 5 (Ex. C);

Heslop Dep. at 19:21-20:7 (Ex. D); Corrigan Dep. at 15:15-23 (Ex. E).)

Formation of ViiV, however, required the separation of SKB Corporation's HIV assets

from other GSK entities. (Heslop Decl. at ¶ 5.) This created two separate problems that required

solution by two separate conversions. The first problem was that if SKB Corporation remained a

corporation, the transfer of its HIV business to ViiV would trigger a tax liability such that GSK

Holdings and its parent companies would not have established ViiV. (Heslop Decl. at ¶ 5;

Heslop Dep. at 18:21-21:5.) To solve this problem SKB Corporation would have to convert into

an LLC. As an LLC, transfer of the HIV assets would not trigger the same tax liability, and the

joint venture could go forward. (Heslop Dep. at 19:21-21:17, 139:9-16.)

This solution, however, presented another problem. Under Pennsylvania law, to convert

into an LLC, SKB Corporation would have to dissolve and actually wind down as a corporation.

*See* 15 Pa. Cons. Stat. § 8959(a), (b). In addition to being an onerous process, termination of

- 6 -

SKB Corporation would have caused a break in the continuity of the legal entity.  Maintaining the continuity of the legal entity is important for many reasons, including (a) avoiding complex effects on many third-party agreements that contained restrictions on transfer and assignment, and (b) not triggering issues related to ownership of intellectual property rights.  (Heslop Decl. at ¶ 10; Heslop Dep. at 137:12-39:8.)  In contrast, the discontinuity problem did not exist for Delaware corporations because a Delaware corporation can convert to an LLC without any break in the continuity of the legal entity.  *See* 6 Del. Code § 18-214.

Consequently, the solution to these problems was a two-step process.  SKB Corporation first converted from a Pennsylvania corporation to a Delaware corporation to solve the continuity problem.  Then, SKB Corporation converted from a Delaware corporation to a Delaware LLC — GSK LLC — to prevent triggering the prohibitive tax liability.  With the continuity and taxation issues resolved, GSK and Pfizer entered into their joint venture.  (Heslop Dep. at 140:2-23.)

**B.      GSK LLC Was Formed as a "Manager-Managed" LLC.**

LLCs are a common business form recognized by every state.  (*See* Macey Decl. at ¶ 20.) Under Delaware law, an LLC can be managed either by its members ("member-managed") or by managers ("manager-managed").  (*Id.* at ¶ 36.)  The LLC's operating agreement specifies whether the LLC is member-managed or manager-managed.  (*Id.*)  If the LLC agreement provides for the management of an LLC by a manager, "the management of the [LLC], to the extent so provided, shall be vested in the manager."  6 Del. Code § 18-402.  Otherwise, the management of the LLC is vested in its members.  *Id.*

GSK LLC was formed as a manager-managed LLC, and its operating agreement provides for the management of GSK LLC to be vested in a Board of Managers.  (*See* Macey Decl. at ¶ 37; *see also* GSK LLC Operating Agreement at § 4.1 (Ex. F).)  As a member of a manager-

managed LLC, GSK Holdings was never vested with management responsibility for GSK LLC, and therefore, could not have delegated those responsibilities to anyone else.

GSK LLC was also formed as a single-member LLC, which means that it is a wholly-owned subsidiary of another business entity. (*See* Macey Decl. at ¶¶ 32-34.)  GSK LLC's sole member is GSK Holdings, a corporation incorporated under Delaware law.  This structure is widely accepted, (*see id.* at ¶¶ 32-33), and it is common for a holding company to establish a subsidiary that is a single-member LLC. (*See id.* at ¶ 32.)  There are sound business reasons for adopting such a structure, having nothing to do with federal jurisdiction. (*See id.* at ¶ 33.)

**C.     GSK Holdings' Functions Are Narrow and Straightforward.**

Formed in 1999, GSK Holdings has owned GSK LLC and its predecessors, first as a shareholder (for the corporation) and then as a member (for the LLC ) for over a decade, starting well before SKB Corporation contemplated becoming an LLC. (Heslop Decl. at ¶ 11; Heslop Dep. at 17:11-16.)  GSK Holdings is a holding company.  A holding company is one that is organized to own a controlling interest in another company. (*See* Macey Decl. at ¶ 28.)  The holding company structure has been used since the inception of the corporate form. (*See id.*)  Because of the benefits they provide, holding companies are, like LLCs, very common. (*See id.* at ¶¶ 28-29.)  Holding companies can offer several advantages because their simplified structure allows companies to reorganize and restructure more easily.  For example, whereas a sprawling company might have to put actual assets or capital resources on the auction block to divest itself of a division, a holding company can accomplish the same transaction simply by selling the stock of the subsidiary company that owns the assets or capital resources.

Holding companies are distinguished from operating companies, which manufacture goods and/or sell services. (*See id.* at ¶¶ 30-31.)  Holding companies are not complex, and their

functions are narrow and straightforward. (*See id.*) Thus, although a holding company may own

controlling shares in an operating company (*e.g.*, one that makes, sells, and markets prescription

drugs), the holding company itself does not do or transact the business of that operating

company. (*See id.*)

Deposition testimony from GSK Holdings' Former President Julian Heslop and its Vice

President Michael Corrigan bear out that distinction for GSK Holdings.[5] As a holding company,

GSK Holdings is "relatively simple" and its "affairs are very simple, very straightforward."

(Heslop Dep. at 42:2-23.) The business of GSK Holdings "is very much holding other

companies and activities related to that." (*Id.* at 59:15-24.) GSK Holdings holds cash, money

market investments, an investment in its subsidiary GSK LLC, and intercompany accounts that

are used to make loans between GSK Holdings and other members of the GSK group of

companies. (*Id.* at 59:15-60:21.) It declares dividends up the corporate chain to its parent

companies. (*Id.* at 133:12-24.) The management of intercompany debts is also a significant part

of GSK Holdings' activities. (Corrigan Dep. at 17:4-8.) For example, GSK Holdings owed and

subsequently repaid more than $10 billion of intra-group debt as part of the merger of

GlaxoWellcome and SmithKline Beecham. (Heslop Decl. at ¶ 15.) GSK Holdings also pays

taxes, and it has litigated over its rights and liabilities. (*Id.*)

Because GSK Holdings is not an operating company, it does not have "sales and cost of

goods and salesmen and things like that." (Heslop Dep. at 59:15-60:9.) It does not research or

develop medications, manufacture any goods, or provide or sell any services. (*Id.* at 150:4-19.)

In contrast, GSK LLC *is* an operating company that researches, develops, and markets

pharmaceutical products. (*Id.*; *see also* Heslop Decl. at ¶ 16.) While GSK Holdings owns GSK

LLC as a subsidiary asset, that does not transform GSK Holdings into an operating company.

---

[5] Mr. Heslop has retired and GSK Holdings' current president is Simon Dingemans.

Instead, it remains a holding company, together with the narrow functions and activities of a holding company.

**D.     GSK Holdings Performs Its Limited Functions in Delaware.**

GSK Holdings' board meetings are all held in Wilmington, Delaware. (Heslop Dep. at 156:12-23.) When board members cannot personally attend board meetings, they can attend by phone. The meetings are usually chaired by the Delaware-based director, Mr. Donald McLamb, from Wilmington. Mr. McLamb and Ms. Elizabeth Bothner, the Assistant Secretary of GSK Holdings, prepare the minutes for each board meeting. Ms. Bothner maintains the meeting minutes in Wilmington.

At these regular, quarterly board meetings held in Wilmington — and at special meetings also held in Wilmington — GSK Holdings' directors make the decisions that authorize and give effect to GSK Holdings' activities. (Heslop Dep. at 66:10-24, 157:2-158:10; *see also* Corrigan Dep. at 23:14-25:22.) For example, it is at board meetings that GSK Holdings' directors approved the distribution of shares required for the ViiV joint venture, approved the timing and magnitude of past dividend payments up the corporate chain to its shareholder, reviewed and approved the corporation's financial statements, elected and made changes required to officers regarding appointment of officers, and authorized individuals to act on the corporation's behalf. (*See* Heslop Decl. at ¶ 15; Heslop Dep. at 49:14-25, 87:25-89:11, 119:16-122:4, 165:1-25; Corrigan Dep. at 11:12-12:6, 25:13-28:18.)

These actions can only be accomplished when GSK Holdings' directors act in concert at board meetings in Wilmington. None of the directors, acting alone, can cause GSK Holdings to take any new, previously unauthorized actions. (GSK Holdings By-Laws (as Amended and Restated October 29, 2010) Art. II, Sect. 3.7 (Ex. G); Heslop Dep. at 157:8-158:22; Corrigan

Dep. at 25:13-22.)  Moreover, none of the directors can or does control the vote of any other

director.  (Heslop Dep. at 163:14-164:19; Corrigan Dep. at 24:7-19.)  Nor do the directors confer

with one another and decide, before board meetings, how they will vote on agenda items.

(Heslop Dep. at 164:8-11; Corrigan Dep. at 24:7-13.)  Instead, each director votes based on his

own knowledge of the facts and strategies of GSK's various business interests and his duty to act

in the best interest of GSK Holdings and its shareholders, i.e., its parent companies.  (Heslop

Dep. at 162:20-163:18; Corrigan Dep. at 23:18-25:22.)  Consequently, it is only at board

meetings that GSK Holdings' Board direct it to perform its relatively narrow functions.

Because GSK Holdings' operations are so straightforward, quarterly board meetings and

special meetings are not only sufficient to control and direct company business but in fact

"work[] very well" to accomplish those tasks.   (Heslop Dep. at 166:1-167:5; *see also id.*

(explaining that quarterly meetings work well for GSK Holdings because its affairs are

"infinitely simpler" than those of an operating company that has "a huge amount of daily

matters").)

To perform these relatively simple functions, GSK Holdings receives some ***support***

***services*** from personnel within the GSK group of companies in other locations.  For example, the

financial statements reviewed, discussed, and approved at Board meetings are prepared by

personnel in London.  (Heslop Dep. at 61:21-62:4; Corrigan Dep. at 38:12-39:3.)  The U.S.

financial group in Philadelphia is not involved in the preparation of GSK Holdings' financial

statements and does not have control over or access to them.  (Corrigan Dep. at 38:15-18.)  The

company receives support on routine U.S. tax issues from GSK personnel in Philadelphia who

report to personnel in London.  For significant or complex tax issues, the company often relies

on personnel in London and engages external consultants.  (Heslop Dep. at 26:19-27:17, 74:7-

- 11 -

75:12, 184:9-186:22.)  Personnel who provide support services cannot take any action that has

not been authorized by GSK Holdings' Board in Wilmington.  (*See id.* at 183:18-25 (agents "are

constrained by what the Board of Directors authorizes or, if it is day-to-day activities, which is

obvious, they are dependent on a general authority to enter into transactions on behalf of the

company . . . .").)

While GSK Holdings receives *services* from GSK personnel in various cities, the

*strategic input*, outside of Delaware, for GSK Holdings comes from London.  Mr. Heslop clearly

distinguished between services and strategy in describing the support that GSK Holdings

receives from GSK personnel in London, versus that received from GSK personnel in

Philadelphia.  (*See* Heslop Dep. at 186:10-14 ("[I]n term of services we get them from

Philadelphia and we get them from the UK pretty equally, but in terms of strategy and strategic

formulation, particularly led by myself, that is London."); *see also id.* at 167:19-22 ("[A]nything

that impinges upon [GSK Holdings] that relates to strategic formulation would come out of my

office and the people who work for me in London.").)

Further proof that the strategy for GSK Holdings, outside Delaware, originates in London

can be seen in the reporting chain of command for the U.S.-based GSK personnel who assist

GSK Holdings.  As the chart below shows, some of the main U.S.-based personnel identified as

providing services to GSK Holdings report to superiors in London:

| U.S.-based employee | Department/Area | . . . reports to . . . |
|---|---|---|
| Jan Lyons (Phila.) | Tax | Helen Jones (London) |
| Audrey Klijian (Phila.) | Treasury | Sarah-Jane Chilver-Stainer (London) |

(Heslop Dep. at 7:5-16, 26:19-27:20, 44:7-23, 116:1-24, 168:14-169:25, 178:7-24; Corrigan

Dep. at 57:17-58:5.)

Summing up the differences between Delaware, London, and Philadelphia, Mr. Heslop

testified that while certain strategic input may come from London, and supporting services from

both Philadelphia and London, Delaware is still the place where potential strategies and financial

information are translated into action for GSK Holdings through votes at Board of Directors

meetings. (*See* Heslop Dep. at 184:15-185:17.)

## III.   ARGUMENT AND CITATIONS TO AUTHORITY

### A.   Plaintiffs' Motion Should Be Denied Because GSK LLC Is A Delaware Citizen.

#### 1.   The Court Should Follow *Johnson*, Which Recognized That *Brewer* and *Maldonado* Impermissibly Disregarded and Conflated the Separate Corporate Identities of GSK LLC and GSK Holdings.

Before *Brewer*, the citizenship rules for corporations and LLCs were relatively settled. A

corporation was a citizen of its state of incorporation and the state where it has its principal place

of business, i.e., "where [the] corporation's officers direct, control, and coordinate the

corporation's activities," otherwise known as its "nerve center." *Hertz*, 130 S. Ct. at 1192. An

LLC's citizenship was determined by the citizenship of its members. *Zambelli*, 592 F.3d at 420.

Where an LLC's members consisted of other LLCs or corporations, "the citizenship of

unincorporated associations [such as LLCs] must be traced through however many layers of

partners or members there may be" in order to determine citizenship. *Id.* at 420 (quoting *Hart v.

Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)). At each level, a court applies the citizenship

rules that pertain to the member in question, as the Third Circuit did in *Zambelli*.

Applied here, GSK LLC's citizenship is governed by that of its sole member, GSK

Holdings. As a corporation, GSK Holdings is a citizen of its state of incorporation, Delaware,

and the state in which GSK Holdings has its principal place of business, i.e., its "nerve center."

Before *Brewer* the "nerve center" test was to be applied to GSK Holdings, not to GSK LLC. In

*Brewer*, however, the Court instead "look[ed] to the **'nerve center'** of the **limited liability company**" to determine GSK Holdings' principal place of business. *Brewer*, 774 F. Supp. 2d at 722, 728-29 (emphasis added). The *Maldonado* court likewise based its holding on the alleged nerve center of GSK LLC. *See Maldonado*, 2011 U.S. Dist. LEXIS 142578, at *25 (asserting that "LLC's pharmaceutical and consumer healthcare business is directed, controlled and coordinated from Philadelphia").

Both the "meld[ed]" rule in *Brewer* and the "intersect[ed]" rule in *Maldonado* improperly disregard the distinction between GSK Holdings and GSK LLC.  It is well-established that if corporate formalities are maintained, citizenship determinations must be based solely on the attributes of the **entity in question**.  This has long been the rule in the Third Circuit.  *See Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d, 1140, 1142 (3d Cir. 1972) ("[T]he case law strongly shows that 'where the corporate separation between a parent and a subsidiary, "though perhaps merely formal," is "real" and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent exerts a high degree of control through ownership or otherwise.'" (*quoting Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F. Supp. 405, 410 (N.D. Cal. 1970))); *see also, e.g., Johnson*, 2012 U.S. Dist. LEXIS 44315, at *15 (rejecting argument that the activities of a subsidiary can be used to determine the citizenship of a parent and reasoning that "[t]he law suggests just the opposite") (collecting cites); *Destech Publications, Inc. v. Port City Press, Inc.* No. 11-5461, 2011 U.S. Dist. LEXIS 138493, at *6 (E.D. Pa. Dec. 1, 2011) (applying *Quaker State* to determine the defendant subsidiary corporation's nerve center and reasoning that focus on operations of the parent LLC in Pennsylvania "is improper and irrelevant to the nerve center analysis"); *EverNu Tech., LLC v. Rohm & Haas Co.*, No. 10-2635, 2010 U.S. Dist. LEXIS

- 14 -

88921, at *5-6 (E.D. Pa. Aug. 26, 2010) (applying *Quaker State*); *Stewart v. Precision Airmotive Corp.*, No. 07-1610, 2007 U.S. Dist. LEXIS 74194, at *7 (E.D. Pa. Oct. 3, 2007) (same); *Holly Farms Corp. v. Taylor*, 722 F. Supp. 1152, 1158 (D. Del. 1989) (same).[6]

For example, in *Stewart*, the Eastern District of Pennsylvania concluded that it is inappropriate to consider the activities of subsidiaries when determining the principal place of business of a parent. 2007 U.S. Dist. LEXIS 74194, at *7. *Stewart* addressed a parent corporation that was the sole member of an LLC. Applying *Quaker State*, the *Stewart* court concluded a corporation's principal place of business is properly determined by focusing on the business operations of the entity in question, not upon the business operations of its wholly-owned LLC subsidiary. In reaching that conclusion, the court observed that "[t]he United States Courts of Appeals for the First and Ninth Circuits are in agreement [with the Third Circuit] that the activities of a subsidiary should not be attributed to the parent when a court decides the principal place of business of the parent unless their relationship is an 'alter ego' or unitary relationship." *Id.* at *7.

More recently, another district court in the Third Circuit showed a similar respect for separate corporate forms in *Poznanovich v. AstraZeneca Pharms. LP*, No. 11-4001, 2011 U.S. Dist. LEXIS 142697 (D.N.J. Dec. 12, 2011). There, the court applied *Zambelli* to a limited partnership, which (like an LLC) is an unincorporated business entity. *See id.* at *5. Although none of the partners of the limited partnership were New Jersey citizens, the plaintiff in

---

[6] This is also the general rule in other circuits. *See, e.g., Topp v. CompAir, Inc.*, 814 F.2d 830, 835 (1st Cir. 1987) ("[S]o long as the entity's corporate form is entitled to credibility, the nerve center test looks for the localized nerve center from which the corporation in issue is directly run."); *De Walker v. Pueblo Int'l, Inc.*, 569 F.2d 1169, 1173 (1st Cir. 1978) (court may not look to a subsidiary's activities to determine the principal place of business of its parent); *Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 283 (6th Cir. 1990) (noting that every court of appeals that has considered the question has agreed that, when corporate formalities are maintained, jurisdiction over a subsidiary is determined based on the subsidiary's citizenship); *J.A. Olsen v. City of Winona, Miss.*, 818 F.2d 401 (5th Cir. 1987) (refusing to impute citizenship of a parent to the subsidiary when the two corporations were separately incorporated).

- 15 -

*Poznanovich* nevertheless argued that the limited partnership was a New Jersey citizen because it was the general partner of a separate limited partnership that *was* a New Jersey citizen. *See id.* at *7. The *Poznanovich* court rejected this argument and instead applied the usual citizenship rules for unincorporated entities, as dictated by *Quaker State*:

> While it is unclear to the Court whether Plaintiff is arguing that [the limited partnership] must be deemed to be a forum defendant because it is the general partner *of* a forum defendant or because [the limited partnership] is in a partnership *with* a forum defendant, in either case Plaintiff is wrong. [The limited partnership's] relationship with these entities are not relevant for the "citizenship" purposes here. Rather, the Court must look to the partners comprising [the limited partnership], and, in doing so, finds [the limited partnership] is not a forum defendant.

*Id.* at *7 (emphasis in original).

By basing the citizenship of GSK Holdings on the "nerve center" of GSK LLC, the *Brewer* and *Maldonado* courts looked through GSK Holdings to the operations of GSK LLC, even though there was no evidence to support piercing the corporate veil.[7] Although GSK LLC fully briefed and argued this issue in both the *Brewer* and *Maldonado* cases, neither opinion makes any mention of it. Despite this omission, *Maldonado* acknowledged that "Holdings plays **no role** in LLC's operations," (2011 U.S. Dist. LEXIS 142578, at *18, emphasis added), demonstrating that, under *Quaker State*, it is improper to consider GSK LLC's operations in determining GSK Holdings' principal place of business. *See also id.* at *13 ("Holdings does not direct, manage or control any of LLC's operations."); *id.* at *18 ("Management of LLC's operations does not reside in Holdings, the sole member."); and *id.* at *21 ("The operational and

---

[7] As counter-examples of instances in which parent corporations were acting as "alter ego" or "unitary" entities with their subsidiaries, so as to justify piercing the corporate veil for citizenship purposes, *see Douglas v. Ryder Truck Lines, Inc.*, 597 F. Supp. 1100, 1101 (E.D. Pa. 1984) (finding that the subsidiary "implemented" the "broad policy decisions" of the parent "on a day-to-day basis"); *Bonar, Inc. v. Schottland*, 631 F. Supp. 990, 997 (E.D. Pa. 1986) (finding that the owners of the parent "make all of the business decisions and completely dominate" the subsidiary). There is no evidence in the record to suggest that the relationship between GSK Holdings and GSK LLC is remotely similar to those presented in *Douglas* or *Bonar*.

business decisions affecting LLC are not made by Holdings or its board of directors, but by the officers and directors of LLC.").

Recently, Judge Diamond recognized the flawed reasoning of *Brewer* and *Maldonado* and declined to follow their approach. In *Johnson*, Judge Diamond rejected the argument that the court should look through GSK Holdings to GSK LLC because "Holdings and LLC are distinct entities that conduct significant, but different, business activities. Holdings's nerve center is not in Philadelphia because its investment (LLC) operates there." *Johnson*, 2012 U.S. Dist. LEXIS 44315, at *19. Instead, he applied *Zambelli* and *Hertz* in the straightforward manner dictated by the Third Circuit and the Supreme Court, as Judge McLaughlin did in *White*. Applying *Zambelli*, Judge Diamond reasoned that "[b]ecause GSK LLC's sole member is Holdings, its citizenship is determined by that of Holdings." *Id.* at *7. Applying *Hertz*, he reasoned that "a corporation's principal place of business — including that of a holding company — is the state in which the *corporation*'s activities are 'directed, controlled, and coordinated.'" *Id.* at *18-19 (emphasis in original, quoting *Hertz*). He concluded that "Holdings's nerve center is where its ownership decisions are made: Wilmington", and as a result, "Holdings and LLC are Delaware citizens." *Id.* at *19.

Nothing in *Hertz* authorizes a special "meld[ed]" rule (or the *Maldonado* court's "intersect[ion]" of the rules) for single-member LLCs owned by holding companies. As Judge Diamond explained:

> The result Plaintiffs urge would effectively construe all holding companies out of existence and contravene *Hertz*. By Plaintiffs' logic [which is based on the same logic that Plaintiffs advance here], a Delaware corporation that holds fifteen limited liability companies operating in fifteen different states might well have fifteen nerve centers. The Supreme Court has condemned precisely such an anomalous result. . .[m]oreover, there is no indication that the *Hertz* Court intended to create a 'holding company exception' to its admonition that a corporation has only one

- 17 -

> nerve center.  Indeed, the creation of such an exception would necessitate
> the kind of complex jurisdictional administration the *Hertz* Court
> condemned.

*Id.* at *18 (internal citations omitted).  As Judge Diamond further explained, the determination of

a holding company's nerve center under *Hertz* must take into account the limited activities

holding companies perform.  *See id.* at *10-11 ("Holdings's Wilmington 'footprint' is certainly

modest.  I must measure that footprint, however, against the modest scope of Holdings's

activities.").

Additionally, although *Maldonado* states that the test for LLC citizenship "has not been

adopted by the Supreme Court," (2011 U.S. Dist. LEXIS 142578, at *16), this statement

disregards that (1) *Zambelli* is based on the Supreme Court's "flat rejection" of "arguments in

favor of extending the rule of corporate citizenship to analogously formed business entities,"

*Zambelli*, 592 F.3d at 419 (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 200 (1990)), and

(2) *Zambelli* is binding Third Circuit precedent.  *See Johnson*, 2011 U.S. Dist. LEXIS 44315, at

*7 (recognizing that "[GSK] LLC is a pharmaceutical and consumer healthcare company with its

principal place of business in Philadelphia" but reiterating that "[o]nce again, however, a limited

liability company's citizenship is determined solely by the citizenship of its members, not by the

state in which it is legally organized or has its nerve center") (citing *Zambelli*); *see also, e.g.*,

*Topp*, 814 F.2d at 837 (observing that disregarding the separate businesses of parents and

subsidiaries invites courts to become "mired down in the hopeless and unnecessary task of

deciphering the internal power struggles" within related entities, contrary to *Hertz*'s emphasis on

simplicity).

Moreover, deviation from the rule governing the citizenship of unincorporated business

entities is not warranted simply because a result may seem counterintuitive.  For example, in

*Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179 (3d Cir. 2008), the Third Circuit analyzed the citizenship of the law firm Morgan Lewis which, like GSK LLC, is an unincorporated business entity. *Id.* at 182. Applying *Carden*, the court held that because at least one partner of Morgan Lewis was a U.S. citizen living abroad, and therefore "stateless", the entire firm was "stateless" and thus could not have complete diversity in any state. *Id.* at 184-85. The court refused to treat the case as an exception because "the Supreme Court has explicitly held, and consistently stated, as we have already noted, that a partnership is not a 'citizen' for purpose of diversity jurisdiction." *Id.* at 184; *see also id.* at 186 (reasoning that "[I]t is not the province of this or any other lower court to undermine the *Carden* rule") (J. McKee, concurring).

In addition to *Johnson*, several other post-*Hertz* courts in the Third Circuit have found that *Hertz* did not change the citizenship rule for unincorporated business entities. For example, a Pennsylvania district court found that allegations that the plaintiff was a Texas LLC with a principal place of business in Texas were irrelevant to the diversity analysis because "[t]hese are the necessary averments to determine the states of citizenship of a corporation" but "'the citizenship of an LLC is determined by the citizenship of its members.'" *Chief Gathering LLC v. Watkins,* No. 11-1760, 2011 U.S. Dist. LEXIS 113415, at *3-4 (M.D. Pa. Oct. 3, 2011) (quoting *Zambelli*). The court further explained that "[m]oreover, *the fact that the officers who direct, control and coordinate [the LLC] are located in Texas does not alter the above analysis*. While this information may be useful in substantiating [the LLC's] principal place of business if it were a corporation, it does not sufficiently indicate the citizenship of all of its members." *Id.* at *4 (emphasis added); *see also, e.g., Williams v. Braden Drilling, LLC*, No. 11-2342, 2011 U.S. Dist. LEXIS 149640, at *3-4 (M.D. Pa. Dec. 30, 2011) (allegations that the defendant was a West Virginia LLC with a principal place of business in West Virginia were irrelevant to

diversity analysis because those allegations are necessary to establish the citizenship of a corporation, not an LLC); *Abuhouran v. KaiserKane, Inc.*, No. 10-6609, 2011 U.S. Dist. LEXIS 145910, at *20 (D.N.J. Dec. 19, 2011) ( "For purposes of diversity jurisdiction, '[a] corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.' By comparison, 'the citizenship of an LLC is determined by the citizenship of each of its members.'") (internal citations omitted, quoting *Swiger* and *Zambelli*); *see also id.* at *20 n.10 (further explaining that "for any such member [of an LLC] that is a corporation, the state of incorporation and the principal place of business must be identified and plead").

Post-*Hertz* decisions from other circuits are in accord. *See, e.g., Citadel Crossing Assocs., L.P. v. CentiMark Corp.,* No. 11-2653, 2011 U.S. Dist. LEXIS 125164, at *7 (D. Colo. Oct. 27, 2011) (explaining that the nerve center test does not determine an LLC's citizenship); *Bartram, LLC v. C.B. Contrs., LLC*, No. 1:09-cv-254-SPM/AK, 2010 U.S. Dist. LEXIS 92008, at *6-7 (N.D. Fla. Aug. 10, 2010) (same).

### 2. The Court Should Not Follow *Brewer* and *Maldonado* Because GSK LLC Was Formed as a "Manager-Managed" LLC.

The *Brewer* court justified its new rule by reasoning that it was "confronted with an atypical factual scenario" and explained that its holding was based on "the unusual circumstances surrounding the relationship between the limited liability company and the holding company that owns an investment in it." *Brewer,* 774 F. Supp. 2d at 722. Central to the court's reasoning was that GSK Holdings had "delegated its rights and power to manage and control the business and affairs of LLC to LLC's directors and officers." *See id.* at 725 n.18.

Because the *Brewer* plaintiffs had never advocated such a distinction, and therefore had conducted no discovery on it, the record in *Brewer* was not well-developed as to: (1) whether GSK LLC had been formed as a "manager-managed" or "member-managed" LLC; (2) whether

- 20 -

GSK Holdings had "delegated" its managerial responsibility for GSK LLC to the managers of

GSK LLC; or (3) whether single-member LLC subsidiaries were so "unusual" or "atypical" as to

warrant a departure from the ordinary application of *Hertz* and *Zambelli*.

The supplemented record in this case shows that *Brewer*'s "meld[ed]" rule has no

application to GSK LLC.  First, GSK LLC's structure as a single-member LLC subsidiary is

neither "unique," "anomal[ous]," or "unusual."  LLCs are commonplace and exist by statute in

every state.  (*See* Macey Decl. at ¶ 20.)  As the *Maldonado* court conceded, holding companies

are similarly common, and for a holding company to wholly own an LLC (i.e., to form a single-

member LLC subsidiary) is no more or less unusual than any other type of parent-subsidiary

relationship. *See Maldonado*, 2011 U.S. Dist. LEXIS 142578, at *15 ("We agree with LLC and

its expert, Jonathan Macey, that holding companies and single-member limited liability

companies are not unusual and are, indeed, common.").

Second, and more importantly, GSK Holdings never "delegated the operational decision-

making" of GSK LLC to anyone.  GSK LLC was *formed* as a manager-managed LLC by its

operating agreement pursuant to Delaware law.  (*See* Macey Decl. at ¶ 37 (noting that GSK

LLC's operating agreement states:  "The business and affairs of the Company shall be managed

by a Board of Managers (the "Board"), which shall consist of at least three persons (each such

person, a "Manager").)  As such, the right to manage GSK LLC was *vested* in its managers.  (*See

id.* at ¶¶ 37-38.)

Under § 18-407, the delegation of rights is distinct from the vesting of rights.  (*See*

Macey Decl. at ¶ 38.)  Accordingly, "[a] member or manager first must have management

authority under § 18-402 (as provided in the LLC's operating agreement) before it can delegate

that authority under § 18-407." (*Id.*)  GSK LLC's operating agreement did not give GSK

Holdings the ability to manage the business and affairs of GSK LLC. (*See id.* at ¶ 39.) Because – applying § 18-402 – GSK Holdings did not have the right to manage the business and affairs of GSK LLC, it could not have *delegated* that right under § 18-407. (*See id.*) As shown below, the *Maldonado* court agreed but adopted a new delegation theory that is equally untenable.

As a member of a "manager-managed" LLC, GSK Holdings has the obligation to appoint managers for GSK LLC — not to direct the LLC's business. In short, given that the "rights and power to manage and control the business and affairs of LLC" were never vested in GSK Holdings, it was impossible for GSK Holdings to have delegated those "rights and power" to anyone. And although GSK LLC disagrees that GSK Holdings delegated any authority to GSK LLC, and that GSK Holdings ever had such authority to delegate, that simply is not the test. The issue, under *Hertz*, is where **GSK Holdings'** officers direct, control, and coordinate **GSK Holdings'** activities. *See Hertz*, 130 S. Ct. at 1186.

Additionally, *Maldonado*'s delegation theory is (1) different from that in *Brewer*, conceding that the *Brewer* analysis is incorrect, and (2) unsupported by the facts. First, the *Brewer* court acknowledged that *Hertz* and *Zambelli* required it to determine GSK Holdings' nerve center. *See Brewer*, 774 F. Supp. 2d at 728 ("Our examination entails looking at what LLC does *for Holdings*.") (emphasis added). In doing so, the court relied on § 18-407, which allows the manager of an LLC to "delegate to agents" its rights and powers to manage the LLC. *See id.* at 728-29 (reasoning that GSK Holdings delegated its managerial rights to GSK LLC's managers under § 18-407, and, therefore, GSK LLC's managers "are still part of Holdings because they are *managing* LLC *on behalf of* Holdings") (emphasis in original). After concluding that, under § 18-407, GSK LLC's managers were acting "on behalf of" or "for" GSK

Holdings *in Philadelphia*, the *Brewer* court found that GSK Holdings' nerve center was Philadelphia. *Id.* at 730.

The *Maldonado* court conceded, however, that "Holdings has no management authority to delegate under § 18-407." 2011 U.S. Dist. LEXIS 142578, at *19. Unable to find support for its delegation theory in § 18-407, the *Maldonado* court reversed course on its analysis of the Delaware LLC statutes and its theory of how GSK Holdings' nerve center is Philadelphia. Without the support of § 18-407, the *Maldonado* court acknowledges that GSK LLC's managers are not, in fact, acting "on behalf of" or "for" GSK Holdings, but rather "for" and "on behalf of" the LLC itself. *See id.* at *21 ("[T]he managers are not members of the LLC, they are part of the LLC.... [T]hey act *for* and *on behalf of* the *LLC*. Their authority derives from *the LLC* . . . .") (emphasis added). These concessions undercut *Brewer*, which was based on the theory that, under § 18-407, GSK LLC's managers were acting "on behalf of" GSK Holdings *in Philadelphia*.

Unable to rely on § 18-407 to support the position that Philadelphia is GSK Holdings' nerve center, the *Maldonado* court resorts to a "*de facto* delegation" theory under § 18-402. According to the court, GSK Holdings engaged in a "*de facto* delegation" of management authority when GSK LLC was formed as a manager-managed LLC on October 27, 2009. This strained fallback theory fails for several reasons. First, § 18-402 makes no mention of the concept of a "delegation," unlike § 18-407, which provides specifically for a "delegation" to agents, officers and employees. In fact, the word "delegation" does not even appear in § 18-402. *Compare* Del. Code Ann. tit. 6, § 18-402 ("Management of limited liability company") *with* Del. Code Ann. tit. 6, § 18-407 ("Delegation of rights and powers to manage"). And even if a "*de facto* delegation" did occur, which GSK LLC disputes, there has been no suggestion that this

new type of delegation would somehow cause GSK LLC's managers to be operating "on behalf

of" or "for" GSK Holdings, as would happen with a delegation under § 18-407. The *Maldonado*

court admits as much when it states that the LLC's managers "are part of the LLC. [T]hey act

***for*** and ***on behalf of*** the LLC. Their authority derives from ***the LLC*** . . . ." 2011 U.S. Dist.

LEXIS 142578, at *21 (emphasis added).

     *Maldonado*'s flaws are most evident when the rationale is compared to that of *Brewer*

(the latter opinion now abandoned due to improper reliance on § 18-407). In *Brewer*, the court

held that GSK Holdings' nerve center was Philadelphia because, at all times since October 2009,

the "agents" of GSK Holdings were operating "on behalf of" GSK Holdings on a daily basis *in*

*Philadelphia*. But in *Maldonado*, the court held that GSK Holdings' nerve center was

Philadelphia because, *on one day in October of 2009*, GSK Holdings signed an operating

agreement stating that GSK LLC would be a manager-managed LLC. This comparison alone

demonstrates why *Maldonado's* "de facto delegation" theory cannot stand. *See Topp*, 814 F.2d

at 835 (holding that merely exercising the control that is incident to ownership does not allow a

court to ignore corporate forms).

     Even if a *de facto* delegation occurred, such a delegation would not determine GSK

Holdings' principal place of business. The nerve center is "the place where a corporation's

officers direct, control, and coordinate the corporation's activities." *Hertz*, 130 S. Ct. at 1192.

The *Maldonado* court's *de facto* delegation theory cannot be squared with *Hertz* because the

court rightfully acknowledges that GSK LLC's Philadelphia-based managers are not acting on

behalf of GSK Holdings. *See* 2011 U.S. Dist. LEXIS 142578, at *21. If GSK LLC's managers

are not agents or officers of GSK Holdings, the purported *de facto* delegation is not relevant to

the *Hertz* analysis. The court's resort to a *de facto* delegation theory demonstrates that the

Delaware statutes provide no support for concluding that GSK Holdings' nerve center is Philadelphia. *See also, e.g., Johnson*, 2012 U.S. Dist. LEXIS 44315, at *15-16 ("I agree that Delaware law gave Holdings, as owner of LLC, the authority to operate LLC, had it chosen to do so. Plaintiffs' suggestion notwithstanding, the statutory conferral of such authority is hardly unusual. . .[f]urther, apart from *Brewer*, Plaintiffs cite no decision (and I have found none) that adopts this delegation argument. In these circumstances, Holdings's decision to conduct only ownership activities and 'delegate' operations authority is typical of all holding companies and determines neither Holdings's nor LLC's citizenship.") (internal citations omitted).

Furthermore, the *Maldonado* court's *de facto* delegation theory is not supported by the facts. GSK Holdings has never directed or controlled a pharmaceutical business. SKB Corporation was managed by its Board of Directors. After SKB Corporation converted into GSK LLC, that same Board continued to manage GSK LLC's operations. (*See* Heslop Dep. at 52:22-25 ("Q. So the Board that existed for SmithKline Beecham Corporation continued over as the Board for GlaxoSmithKline LLC, correct? A. Yes.").) *Maldonado* only confirms that GSK Holdings has never directed or controlled a pharmaceutical business. *See* 2011 U.S. Dist. LEXIS 142578, at *15 (quoting the testimony of GSK Holdings' former President that "LLC is 'simply a continuation of what used to be SKB'"); *id.* at *20 ("[T]he board of directors of SKB seamlessly transitioned to the board of managers of LLC."). Therefore, *Maldonado*'s revamped delegation theory is based on the erroneous and implausible premise that GSK Holdings had power to manage GSK LLC on October 27, 2009 — at the precise moment when GSK LLC was formed — even though GSK Holdings never had that power at any other point in time.[8]

---

[8] In addition, even if GSK Holdings did delegate managerial authority to GSK LLC under § 18-402 on October 27, 2009, which it did not, that would be irrelevant to whether removal of this case is proper because "jurisdiction is tested by the facts as they existed when the action is brought." *Smith v. Sperling*, 354 U.S. 91, 93 (1957). *See also Midlantic Nat. Bank v. Hansen*, 48 F.3d 693, 695 (3d Cir. 1995) ("Whether diversity jurisdiction

- 25 -

GSK respectfully urges the Court to follow *White* and *Johnson* and to find that GSK is

solely a citizen of Delaware.  As the *Maldonado* court conceded, the relationship between GSK

Holdings and GSK LLC is common.  GSK LLC was a "manager-managed" LLC from its

inception, and thus it was impossible for GSK Holdings to have "delegated" any "rights and

power to manage and control the business and affairs of LLC" — because those "rights and

power" were never vested in GSK Holdings.  Instead, the control that GSK Holdings had over

GSK LLC was much more akin to the control that is incident to ownership, which is insufficient

to justify disregarding the separate and distinct  entities of GSK Holdings and GSK LLC.  *Topp*,

814 F.2d at 835.  In sum, the record in this case demands a straight-forward application of *Hertz*

and *Zambelli*, which leads to the conclusion that GSK Holdings is a citizen of Delaware alone.

   **3.**     **GSK Holdings' "Nerve Center" Is in Delaware.**

As three other courts have held, GSK Holdings' activities are directed, controlled, and

coordinated at its board meetings in Wilmington, making it (and therefore GSK LLC) a

Delaware citizen.  *Johnson*, 2012 U.S. Dist. LEXIS 44315; *White*, 2010 U.S. Dist. LEXIS

79520; *Hoch*, 736 F. Supp. 2d 219.

At the quarterly meetings in Wilmington, GSK Holdings' Board of Directors reviews and

approves the corporate accounts, and reviews, controls, and ratifies the corporation's key

business activities.  (Heslop Decl. at ¶ 22; McLamb Dep. at 107:9-18; 137:1-17 (Ex. H).)

Minutes reflecting the actions of GSK Holdings' Board are stored in Wilmington.  (McLamb

Dep. at 34:13-35:4; Heslop Dep. at 156:5-23.)  Administrative functions attendant to the meetings,

---

exists is determined by examining the citizenship of the parties at the time the complaint was filed.") (citing *Smith*).
Accordingly, whether removal is proper is based on the facts as they existed at the time when this action was filed,
not the facts as they allegedly existed on October 27, 2009, when GSK LLC was formed.  There is no dispute that as
of the time of the filing of the Complaint in this case, GSK Holdings did not have authority to direct or manage GSK
LLC.  *See Maldonado*, 2011 U.S. Dist. LEXIS 142578, at *18 (contending that "Holdings elected to make LLC a
manager-managed LLC.  In doing so, it relinquished its right and power to manage and operate the company.")
Accordingly, even under *Maldonado*'s new — but still erroneous — delegation theory, it is improper to look to
GSK LLC's business activities to determine GSK Holdings' principal place of business.

including the keeping of minutes, are centralized in Wilmington. (*Id.*) GSK Holdings' activities

are controlled and coordinated through the actions and decisions of its officers and directors.

(Heslop Decl. at ¶ 19.) Being a holding company, those activities are relatively few and are

controlled and managed primarily through review and ratification of financial accounts. (*Id.*)

But GSK Holdings' Delaware headquarters is the center of its direction, coordination, and

control — its nerve center. *See Johnson*, 2012 U.S. Dist. LEXIS 44315, at *14 ("Because

Holdings's Board undertakes its activities entirely in Wilmington, Holdings's nerve center is in

Delaware."); *White*, 2010 U.S. Dist. LEXIS 79520, at *8 (finding "ample evidence" that GSK

Holdings' nerve center is in Delaware);

 Plaintiffs' Motion does not address the strategic direction and coordination that GSK

Holdings' Board performs in Wilmington, and it does not identify a single activity of GSK

Holdings in Philadelphia that constitutes direction, control, or coordination. (*See* Pls.' Mot. at 5-

6 (execution of document in Philadelphia pursuant to authority given *in Wilmington*) and 10

(preparation of a tax return in Philadelphia pursuant to authority given *in Wilmington*).) And

although *Hertz* rejected the idea that a statement in a public document can establish a

corporation's nerve center, *see* 130 S. Ct. at 1194-95, Plaintiffs' reliance on GSK's annual report

only undermines their position: the annual report identifies *GSK Holdings'* headquarters as

*Wilmington*. (*See* Pls.' Mot. at 7.)

 In reaching a contrary conclusion, the *Brewer* and *Maldonado* courts misapplied the

nerve center test, which requires a court to determine where a corporation's activities are

directed, controlled, and coordinated. *Hertz*, 130 S. Ct. at 1192. The courts did not dispute that

GSK Holdings does the things that holding companies normally do, and that its activities in that

regard comply with Delaware law. *Brewer*, 774 F. Supp. 2d at 725 (recognizing that GSK

Holdings is a holding company, not an operating company); *Maldonado*, 2011 U.S. Dist. LEXIS

142578, at *12 (recognizing that GSK Holdings is "a non-operating holding company"). Nor did

the courts dispute that those activities take place in Delaware. Instead, the courts found that

GSK Holdings' nerve center is Philadelphia by focusing on business activities that are irrelevant

under *Hertz*.

Instead of focusing on where corporate decision-making actually takes place, the *Brewer*

court gave undue weight to, for example, the size of GSK Holdings' Delaware office space and

how it is furnished, the number of GSK Holdings' employees, how incoming calls and mail are

routed,[9] and the length of GSK Holdings' Board of Directors meetings. *Brewer*, 774 F. Supp. 2d

at 726-28. *Maldonado* only discusses the operating decisions of GSK LLC, ignoring the relevant

inquiry — the operating decision of **GSK Holdings** — and all of the evidence showing that GSK

Holdings' activities are directed, controlled, and coordinated in Delaware. *See* 2011 U.S. Dist.

LEXIS 142578, at *13, 20-21, 25. None of these factors informs the nerve center analysis. *See*

*Hertz*, 130 S. Ct. at 1194 (rejecting tests that "weigh corporate functions"); *see also Cent. W. Va.*

*Energy Co, Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 107 (4th Cir. 2011) (refusing to

examine factors such as how much time corporation's officers devote to directing its business

versus that of its affiliated companies because "doing so would subvert the Supreme Court's

guiding principle in *Hertz* – establishing a simple jurisdictional rule to avoid resource-intensive

litigation")[10]; *Balachander v. AET Inc.*, No. 10-4805, 2011 U.S. Dist. LEXIS 109787, at *30-31

---

[9] The *Brewer* Court's description of how GSK Holdings' telephone calls and mail are handled is incorrect. (*See* McLamb Dep. at 16:23-17:22 (discussing telephone services); *id.* at 43:24-44:10 (discussing mail forwarding).)

[10] In *Central West Virginia Energy*, the Fourth Circuit included a footnote stating that the "proliferation of complex corporate structures . . . may compel further attention to the issue of 'principal place of business' under 28 U.S.C. §1332." 636 F.3d at 107 n.3. The court included a "cf." cite to *Brewer*. The Fourth Circuit's citation in dicta to *Brewer* is not an acceptance of *Brewer*'s reasoning. Moreover, the Fourth Circuit's logic in *Central West Virginia Energy* would compel a ruling for GSK in *Brewer* and this case. *See id.* at 103 (looking to LLC's members' citizenship to determine LLC's citizenship without regard to activities conducted by LLC); *id.* at 104-05

(S.D. Tex. Sept. 27, 2011) (denying remand and holding that "*Hertz* does not require a bricks-and-mortar presence.  To the contrary, the opinion makes clear the Supreme Court's awareness that nontraditional office arrangements are increasingly common.  *Hertz*'s clear emphasis is on **where the corporation is actually controlled**, not where buildings are located, or where the bulk of the corporation's operations are located, or where corporate filings conclusorily state the primary office is located.") (emphasis added).  *See, e.g., In re Hydroxycut Mktg. and Sales Practices Litig.*, No. 09MD2087-BTM, 2010 U.S. Dist. LEXIS 76751, at *10-11 (S.D. Cal. July 29, 2010) (applying *Hertz* and holding that although the bulk of the company's visible business activities took place in New York, the defendant's principal place of business was Ontario where high level decisions were made and instructions were given).

### 4.   Any Suggestion That GSK Holdings Is an "Artifice" or GSK LLC's Post-Litigation Conduct Was Manipulation Is Misplaced.

In finding that GSK Holdings' nerve center is Philadelphia, the *Brewer* court also noted that (1) GSK Holdings by-laws stated that Philadelphia was the location of GSK Holdings' office, books and records, and Board of Directors' meetings, and (2) certain contracts with the U.S. Government identified GSK Holdings as the contracting party and listed a Philadelphia address.  *Brewer*, 774 F. Supp. 2d at 730-31.  However, these documents were inaccurate and did not reflect the **actual business practices** of GSK Holdings or GSK LLC.

When GSK discovered these errors, GSK LLC and GSK Holdings took steps to correct them.  As set forth in the declaration of GSK Holdings' Director Donald McLamb, GSK Holdings' meeting minutes and corporate seal have been maintained in Wilmington, GSK

---

(focusing on where LLC's member's corporate officers conducted oversight and strategic decision-making); *id.* at 105 (recognizing that addresses on a government form were irrelevant under *Hertz*); *id.* at 105-06 (giving no weight to daily management activities in conducting *Hertz* nerve center analysis); *id.* at 106-07 (giving no weight and refusing to examine how much time LLC's officers devote to member company business versus affiliated company business).  *See also Johnson*, 2012 U.S. Dist. LEXIS 44315, at *10-11 (reasoning that a straightforward application of *Hertz* to GSK Holdings "makes plain that Holdings's corporate 'brain' and its nerve center are in Delaware") (citing *Hertz* and *Central West Virginia Energy*).

Holdings' directors have met in Wilmington, and GSK Holdings' only office has been maintained in Wilmington since at least June 2004.  (May 26, 2011 Declaration of Donald McLamb at ¶ 5 (Ex. I).)  When the errors in the by-laws came to the attention of GSK Holdings' then-President, Julian Heslop, in October 2010, the by-laws were amended.[11]  (*Id.* at ¶ 6.)

As set forth in the declaration of Victor G. Vogel, who is employed by GSK LLC, certain contracts incorrectly listed GSK Holdings as a contracting party because an identification number assigned to GSK Holdings was incorrectly used in place of the identification number assigned to the true contracting party, SKB Corporation (GSK LLC's predecessor).  (Declaration of Victor G. Vogel at ¶ 5 (Ex. J).)  GSK Holdings did not enter into or perform those contracts.  (*See id.*)  When the errors were discovered, GSK LLC took steps to correct them to clarify that the actual contracting party was GSK LLC.  (*See id.* at ¶ 7.)  GSK LLC requested approval from the U.S. government to correct certain contracts to reflect that GSK LLC — not GSK Holdings — was the party to and entity that performed the contracts.  GSK LLC is continuing to work with the U.S. government to correct any outstanding contracts that erroneously identified GSK Holdings as the contracting party.

Mr. Vogel submitted the same declaration in cases filed after *Brewer* and was subsequently deposed.  That deposition testimony (1) demonstrates that GSK Holdings does not have the infrastructure or personnel necessary to perform a contract with the U.S. government for

---

[11] Plaintiffs erroneously state that "According to GSK Holdings, Inc.'s by-laws that were in force at the time Plaintiffs' cases were filed, the ***"general office" of GSK Holdings, Inc. and all its "books and papers thereto belonging" shall be at Philadelphia, Pennsylvania."*** (Pls.' Mot. at 17 (emphasis in original).)  GSK Holdings amended its by-laws on October 29, 2010, more than a year before Plaintiffs filed their complaint in the Philadelphia County Court of Common Pleas.  (*See* Notice of Removal (Doc. No. 1) at ¶ 1.)  GSK Holdings' by-laws that were in force when Plaintiffs filed their complaint state that "The general office of the corporation, with the books and papers therefore belonging, shall be at Wilmington, Delaware, in such location as fixed by the Board of Directors from time to time."  (*See* GSK Holdings By-Laws (as Amended and Restated October 29, 2010) Art. I, Sect. 1.1.)  Plaintiffs' reliance on the prior by-laws is misplaced because "jurisdiction is tested by the facts as they existed when the action is brought."  *Sperling*, 354 U.S. at 93; *see also Midlantic Nat. Bank*, 48 F.3d at 695 ("Whether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the complaint was filed.") (citing *Smith*).

the provision of pharmaceuticals, and (2) confirms that GSK Holdings has not entered into or

performed any such contract with the U.S. government.  (*See* Vogel Dep. at 17:10-19, 22:17-25,

35:12-36:23, 51:7-22, 115:1-117:17 (Ex. K).)  And although Mr. Vogel could not answer

plaintiffs' questions at his deposition about what GSK entity received payments for those

contracts, the declaration of Ms. Helene Hellwarth shows that all payments from the U.S.

government since GSK LLC's formation for the contracts identified in Mr. Vogel's declaration

were directed to and received by GSK LLC — not GSK Holdings.  (*See* July 6, 2011 Declaration

of Helene Hellwarth (Ex. L).)

Although *Brewer* suggested that "[GSK] Holdings fits the profile of a company described

by the Supreme Court in *Hertz* as an artifice to manipulate jurisdiction," *Brewer*, 774 F. Supp.

2d at 730, the record shows — and the *Brewer* court agreed — that SKB Corporation did not

convert into an LLC to manipulate diversity jurisdiction, but to facilitate the creation of a joint

venture with Pfizer. *See id.*  In *Maldonado*, the court again stated that "the formation of LLC

was not done with the intent to manipulate jurisdiction," but that it believed "the post-litigation

conduct was."  2011 U.S. Dist. LEXIS 142578, at *14.

GSK Holdings was incorporated in 1999 — nearly 10 years before GSK LLC was

formed. Thus, GSK Holdings was a legitimate holding company both before and after SKB

Corporation converted into GSK LLC.  (*See* Macey Decl. at ¶ 34 (explaining that GSK Holdings

is typical of a pure holding company).)  From GSK Holdings' perspective, the conversion of

SKB Corporation to GSK LLC did not change anything except that GSK Holdings owned the

equity of an LLC rather than the equity of a corporation. (*See id.* at ¶ 43c.)  The fact that the

nature of GSK Holdings' ownership changed — before either *Hertz* or *Zambelli* were decided —

or that its activities are limited, does not mean that an "artifice" has been created.  Further, the

record shows that GSK Holdings and GSK LLC took steps to correct errors in documents that were identified in discovery, which was inevitably post-litigation. These steps were taken to reflect the actual business practices of GSK Holdings and GSK LLC, not to alter the *facts* about the location of GSK Holdings' office or which GSK entity contracted with the government.

### 5. <u>Plaintiffs Rely on Irrelevant Facts and Inapposite Authority.</u>

For all the reasons shown above, Plaintiffs' reliance on GSK LLC's activities misses the point. Plaintiffs also cite unrelated court documents suggesting that GSK LLC is a Pennsylvania citizen. (*See* Pls.' Mot. at 8-9.) These documents do not change the result. Statements of an entity's principal place of business in prior pleadings "have no intrinsic capacity either to establish or disestablish jurisdiction." *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 293 (3d Cir. 1998)[12]; *accord Balachander*, 2011 U.S. Dist. LEXIS 109787, at *25-26 (holding that the defendant's nerve center was in Malaysia, notwithstanding tax filings and corporate registration statements that listed its "principal place of business" as Houston, and noting that "[t]he Supreme Court specifically warned against relying too heavily on corporate filings.") All of these pleadings refer to the principal place of business of GSK LLC or its predecessor, SKB Corporation, not that of GSK Holdings. Two of the pleadings Plaintiffs cite were related to patent infringement cases, where the court's jurisdiction was based on a federal question, and so the phrase "principal place of business" was not being used to establish diversity of citizenship.

Plaintiffs' contention that GSK Holdings' nerve center is not in Delaware because "none of GSK Holdings' directors or officers actually work in Delaware," (Pls.' Mot. at 29), is also wrong. Mr. McLamb is resident in and works primarily in Delaware. (McLamb Decl. at ¶ 2.)

---

[12] Because *Mennen* was decided before *Hertz*, the court's determination of the party's principal place of business was based on the former "center of corporate activities" test, which is no longer applicable. However, the Third Circuit's evaluation of the effect of prior statements of a corporation's principal place of business was not overruled.

Regardless, *Hertz* cautioned against reliance on metrics such as the physical presence of employees because of how modern corporations operate. *See Hertz*, 130 S. Ct. at 1194 (noting the nerve center test must accommodate circumstances such as telecommuting or communication over the Internet). Plaintiffs' repeated references to Wilmington as a "mail drop" are similarly without merit and contradicted by the record. (Heslop Dep. at 66:10-24, 157:8-158:22; Corrigan Dep. at 23:14-25:22; McLamb Decl. at ¶¶ 5, 7-8.)

Plaintiffs' reliance on *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3d Cir. 1960), and cases applying *Kelly*, is equally misplaced. The *Kelly* court's "center of corporate activity" test does not, as Plaintiffs argue, "dovetail[], in relevant aspects, the Supreme Court's *Hertz* 'nerve center test.'" (Pls.' Mot. at 27.) In *Kelly*, the court *expressly rejected* the nerve center test. *See Kelly*, 284 F.2d at 853 (rejecting argument that "the test should be where the 'nerve center' of the corporation's business is"); *see also Destech Publications*, 2011 U.S. Dist. LEXIS 138493, at *5 (noting *Kelly* established a test that the Supreme Court rejected in *Hertz*).

**B.      Although GSK Holdings' "Nerve Center" Is in Delaware, Strategic Input Emanating From Outside of Delaware Comes From London.**

As between London and Philadelphia, it is clear that GSK Holdings receives greater strategic input from London. (*See* Heslop Dep. at 167:6-22 ("[A]nything that impinges upon [GSK Holdings] that relates to strategic formulation would come out of my office and the people who work for me in London.").) Not surprisingly, GSK personnel who are knowledgeable about the relationship between GSK Holdings and other GSK entities (including GSK LLC) either are part of, or report to, the group in London that provides strategic input. (*See* Heslop Dep. at 6:9-7:16, 116:1-8, 168:1-13; Corrigan Dep. at 93:22-95:25.)

But even if this strategic influence did shift the "nerve center" for GSK Holdings to London, it would not change the outcome here. For diversity purposes, a corporation is a citizen

- 33 -

of "every State and foreign state by which it has been incorporated and of the State or foreign

state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  Accordingly, even if

this Court were to find that GSK Holdings' principal place of business is London, complete

diversity would still exist, and the rule barring removal by a resident defendant still would not

apply, because GSK Holdings would be a citizen of the only state by which it has been

incorporated, Delaware, and the foreign state where it has its principal place of business,

England.

## IV.   **CONCLUSION**

For the foregoing reasons GSK LLC respectfully requests that this Court hear oral

argument on Plaintiffs' Motion to Remand and deny that Motion.

Dated:  April 12, 2012

Respectfully submitted,

LAVIN O'NEIL RICCI CEDRONE & DISIPIO

By: */s/ Joseph E. O'Neil*
Joseph E. O'Neil, Esq. (ID No. 29053)
Christine O. Boyd, Esq. (ID No. 28232)
Carolyn L. McCormack, Esq. (ID No. 87800)
Suite 500
190 North Independence Mall West
6th & Race Street
Philadelphia, PA  19106
(215) 627-0303
(215) 627-2551 (facsimile)

Attorneys for Defendant GlaxoSmithKline LLC,
formerly SmithKline Beecham Corporation d/b/a
GlaxoSmithKline

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April, 2012, I caused to be served via ECF

Filing and/or U.S. Mail a true and correct copy of the foregoing **DEFENDANT**

**GLAXOSMITHKLINE LLC, FORMERLY SMITHKLINE BEECHAM**

**CORPORATION D/B/A GLAXOSMITHKLINE'S OPPOSITION TO PLAINTIFFS'**

**MOTION TO REMAND** on the following counsel:

> FELDMAN & PINTO
> Rosemary Pinto, Esquire
> Laura Feldman, Esquire
> 1604 Locust Street, 2R
> Philadelphia, PA 19103
>
> BIFFERATO LLC
> David W. deBruin
> 800 N. King Street, Plaza Level
> Wilmington, DE 19801
>
> SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD LLC
> Trent B. Miracle
> John J. Foley
> One Court Street
> Alton, IL 62002

*Counsel for Plaintiffs*

This 12th day of April, 2012.

/s/ Carolyn L. McCormack
Carolyn L. McCormack

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEISHA YAZZIE, a Minor, by TRICIA YAZZIE, Guardian and Individually** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | **Civil Action No.: 2:12-cv-01006-LDD** |
| **GLAXOSMITHKLINE LLC, formerly SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### <u>ORDER</u>

AND NOW, this ____ day of _____, 2012, upon consideration of Plaintiffs'

Motion to Remand, and Defendant GlaxoSmithKline LLC, formerly SmithKline Beecham

Corporation d/b/a GlaxoSmithKline's response in opposition thereto, it is hereby ORDERED and

DECREED that Plaintiffs' Motion is DENIED.  This matter shall remain in the U.S. District

Court for the Eastern District of Pennsylvania.

BY THE COURT:

_____
DAVIS, J.